STODGHILL v. THE C.; B. & Q. R. Co.

1. **Railroads:** RIGHT OF WAY: DIVERSION OF STREAM. In procuring right of way railway companies do not thereby acquire the right to divert a stream of water from its natural channel, to the injury of the land-owner.

*Appeal from Wapello Circuit Court.*

TUESDAY, APRIL 18.

THE plaintiff is the owner of two tracts of land in the county of Wapello, which tracts are used as one farm, although they do not join. The larger tract consists of about four hundred acres, and the smaller tract of about twenty-nine acres, and is crossed by a stream of water known as North Avery creek. The petition avers that the plaintiff has for years used said stream in connection with his said farm for watering his stock, and that the defendant wrongfully diverted said stream from its natural course and prevented it from flowing over his land, whereby he was deprived of the use of said stream.

The answer avers that the Burlington & Missouri River R. Co., in constructing its road, passed over the said twenty-nine acres, and that the plaintiff, for a valuable consideration, granted to said company a right of way across said land, which right of way so granted passed across said North Avery creek twice in a distance of about one thousand feet, making it necessary for the defendant to build two bridges across said stream, or to fill the channel and divert the stream; that when said road was first constructed, two bridges were placed across said stream, and were used by said Burlington & Missouri River R. Co. for a period of about eight years, when said company leased its road to the defendant. The answer further avers that on account of the increase of business on said road, and the safety of travel, it became necessary to take out said bridges, to fill the said creek channel and divert the said stream from the said twenty-nine acres; that the said filling and diversion of the stream were made under the original

grant of a right of way by plaintiff to said Burlington & Missouri River R. Co.; and the answer denies that defendant has been guilty of any wrong.

The defendant read in evidence a deed from the plaintiff to the said Burlington & Missouri River R. Co. conveying a right of way across said twenty-nine acres, for the consideration of one dollar. During the trial the defendant asked a witness (who had shown himself to be a civil engineer, and qualified to testify as an expert), the following questions, claiming that the answers would establish a full and complete defense to the action:

" Q.   What, in your opinion as a civil engineer, did good engineering and a reasonably prudent construction of the road require in reference to these bridges and that creek?"

" Q.   From your knowledge, as a civil engineer, taking into consideration the business of the road, safety in the transportation of passengers and the permanent construction of the road bed, what would you say would be proper engineering with reference to diverting the stream between said bridges?"

To these questions plaintiff objected, and the court sustained the objection for the reason that the grant of the right of way does not in terms convey the right to divert the stream, and that, as a matter of law, the grant does not convey such right by implication, to which ruling the defendant excepted, and now assigns the same as error.

The defendant asked the following instructions:

" The right of the land-owner to the enjoyment of a water course in its natural channel is an interest in real estate which may be condemned and appropriated under the right of way act, the same as any other right or interest of the land-owner upon compensation being made."

"An assessment of damages under the right of way act for the appropriation of a railroad right of way covers and includes all the damages connected therewith, present and prospective, to which the party will ever be entitled by the prudent construction and operation of the road."

" If you should find that the prudent construction and operation of the road required the diversion of the creek in

question, by the means and in the manner claimed, then the same would be necessarily included in the assessment of damages, made in the proceeding to appropriate the right of way, if such assessment and proceeding were had. And the same would be the case, and the same rule apply, if, instead of securing the right of way by such proceeding, the company acquired it by conveyance from the plaintiff."

The court refused to give the foregoing instructions, and gave the following:

" If the said North Avery creek is a natural stream of water crossing the defendant's right of way and the plaintiff's premises, then the defendant would not have the right in law to divert the stream and change the channel so as to throw it off the plaintiff's premises, and if they have done so they would be liable therefor."

Verdict for the plaintiff. Defendant appeals.

*Stiles & Burton*, for appellant.

*H. B. Hendershott* and *Wm. McNett*, for appellee.

ADAMS, J.—As it is not claimed by the appellant that greater rights were acquired by the plaintiff's deed than would have been acquired by proceedings in condemnation, we shall assume for the purposes of this opinion that they were the same. The question, then, which we are called upon to decide is this: Are the damages resulting to the land-owner from the diversion of a natural stream of water, where such diversion is required by good railroading and a reasonably prudent construction of the road-bed, to be regarded as having entered into and been covered by the condemnation and appraisal? If this question is answered in the affirmative, the defendant, under the testimony offered and excluded, was justified in diverting the stream in question.

In *Sabin v. Vermont Central Railway Co.*, 25 Vt., 363, the plaintiff, who was the owner of land through which the defendant had acquired a right of way, claimed to recover for damages sustained by reason of rock being thrown upon

his land by blasting in the construction of the road.    It was held that it must be presumed that the commissioners, in appraising the right of way, estimated and allowed for such incidental damage, and that the plaintiff could not recover. The court said: "It seems to us very obvious that the right of the defendant to blast these rock in a reasonable and prudent manner did exist, and was conferred by the decision of the commissioners in appraising the plaintiff's damages.  And if we test the extent of that adjudication by the ordinary test of the extent of judgments in merging claims, namely, that every claim is barred which is presented under the particular question before the commissioners, there will be little ground of question remaining.  The plaintiff had the right to claim, and was, of course, bound to present his claim for all damages he was likely to sustain, not only in the running of the road, by fires of engines, and the like, but in the building of the road in the ordinary mode where blasting is universal, and this not in respect to the land taken only, but of the remaining land, as has been repeatedly decided.  And if this claim was not presented when it might have been, it was barred upon general principles universally recognized that no one shall again be called in question for what was, or what might be, and should have been, adjudicated."

In *Proprietors of Locks and Canals v. The Nashua & Lowell Railroad Co.*, 10 Cush., 385, Chief Justice Shaw undertakes to state what are the proper subjects for the assessment of damages in condemning a right of way, and among them he enumerates " the draining of wells, and the diversion of water courses, so far as they are the necessary results of suitable and proper works to accomplish the enterprise, and secure the public easement."   In *Aldrich v. Cheshire Railroad Co.*, 1 Foster, (N. H.), 359, the declaration alleged " that upon the plaintiff's farm in Westmoreland, there was a permanent spring which supplied the plaintiff's house and barn with water, and irrigated his land, and that the defendant by excavations diverted the water from its accustomed course to the injury of the plaintiff."   The evidence showed that the

defendant made an excavation through the plaintiff's ground about fifteen feet deep, and that upon making such excavation the spring disappeared. It was held that the plaintiff could not recover for the reason that it must be presumed that the damages, though not foreseen, were included in the commissioner's appraisal.

Do the foregoing authorities support the doctrine contended for by the appellant in this case? If they do, and if such is the law, we see no way to avoid the conclusion that it is the duty of commissioners, appointed to assess the damages for a right of way, to include in the appraisal all damages which the land owner might sustain, by the diversion of a stream crossing the railroad track, whether such diversion would result in depriving a farm of stock water, or in the destruction of a mill and mill privilege. The only way to protect the land-owner against what the company might do, would be to assume that the company would prefer to pay the damage, however great it might be, and have the privilege of cutting a new channel and filling across the stream, rather than to bridge. It may be said that the commissioners should assess damages for diverting the stream, whenever, in their opinion, it will become necessary for the company to divert it, and not otherwise. But this rule would be impracticable for two reasons: 1. The question of diverting a stream and filling to save the cost of bridging is a question of civil engineering. 2. There is no necessity in any case of diverting a stream to save bridging, except in view of greater economy and safety. As to economy, that would depend largely upon the damages which the company should be adjudged to pay for the privilege of diverting it. In this case the company paid one dollar for whatever rights were acquired. Had there been an assessment of damages with a view to the stream's being diverted, the damages for the diversion might have been adjudged to be such that the company would have deemed it far from economical to pay them and take the privilege. It is not certain, then, whether a railroad company wants to take, and pay for, the privilege of diverting a stream or not. Here then is the difficulty in the rule which appellant contends for.

In *Sabin v. Vermont Central Railway Co.*, it is said that the assessment of the commissioners is like an adjudication of court in this, that the land-owner is conclusively presumed to have presented every claim he had for damages, as a plaintiff in a suit in court is conclusively presumed to have presented every claim which he could present under his petition. This is undoubtedly correct, and the analogy will help us. The company applies for a right of way. It wants a certain number of feet of ground. It wants the privilege of excavating whenever it may be necessary, and at the risk of draining any springs in the immediate vicinity if that should be the result.

It wants the privilege of blasting through rock wherever it may be necessary, and at the risk of throwing pieces upon the adjacent land, and it offers to pay for these privileges whatever the commissioners shall adjudge to be right. All these things are implied in the company's application for a right of way, and hence it will be presumed that they were considered by the commissioners. But when the company comes with its application for a right of way across land which is crossed by a stream of water, does the company by necessary implication say that it wants to take, and pay for, the privilege of diverting it, when such diversion would destroy a mill privilege, or even the land-owner's stock water? We think not. If there is no necessary implication in the application that the company asks, and offers to pay for such a privilege, then the appellant's theory is not maintained, that proceedings in condemnation, or deed of right of way, necessarily grant such privilege.

As to the question of safety to life and property, it may be conceded that as a general rule safety is promoted by the reduction of the number of bridges. But such reasonable degree of safety as the public requires is secured upon railroads with bridges as well as without.

There is nothing, then, either in the matter of economy or safety, that enables us to say that railroad companies by implication apply for the right to take, and pay for, the privilege of diverting whatever stream of water they cross if they may save a bridge by so doing. There might be a case where the

diversion of a stream to some extent would be absolutely nec-
essary. In such case, if there should be one, the company
would have no alternative but to take the right and pay for it.
Their application would by implication cover such right.

We must presume that Chief Justice Shaw had in mind
such a case, in what we have quoted from his opinion in *Pro-
prietors of Locks and Canals v. Nashua & Lowell Railroad
Co.* At all events the case before him was not a case of the
diversion of a stream, nor did it strictly call for an enumera-
tion of the injuries that would by implication be covered by
the commissioners' assessment of damages. Our attention
has been called to no case which seems to us to conflict nec-
essarily with the views which we have above expressed.

AFFIRMED.