REUSCH ET AL v. THE C., B. & Q. R. Co.

LONG ET AL v. THE SAME.

1. **Practice**: REINSTATING EVIDENCE. To justify the court in reinstating the evidence in a case, after it has once been stricken out for the reason it did not appear the evidence had ever been certified, it should at least be shown that it was duly certified within the time required by statute.

2. **Eminent Domain**: PUBLIC USE: DIVERTING COURSE OF STREAM. A railroad company may, under chapter 191, laws of 1880, condemn land for right of way for a channel and change the course of a stream, where the safety of the traveling public would be promoted thereby. For such object the land would be taken for a public use, authorizing the exercise of the right of eminent domain, and for that purpose the statute is not unconstitutional. Whether such right exists where merely the convenience and economy of the company would be promoted, not determined.

*Appeals from Des Moines District Court.*

THURSDAY, MARCH 23.

THESE causes are submitted together as arising upon substantially the same state of facts and involving the same questions of law.

The plaintiffs seek to enjoin the defendant from changing the course of a certain stream of water known as Hawkeye Creek. The defendant claims the right to change the course of the creek under chapter 191 of the laws of 1880, Miller's Code, page 357. The court dismissed the plaintiffs' petitions and they appeal.

*P. Henry Smyth & Son* and *T. C. Whitely*, for appellants.

*Hall & Huston* and *J. W. Blythe*, for appellee.

ADAMS, J.—The defendant has operated its road over its present track for many years. The plaintiffs are the owners of a small tract of land adjacent to the defendant's right of way. Hawkeye Creek crosses this land, and then crosses the

railroad track, and after flowing a certain distance (it does not appear how far), it crosses the track again at a point about six hundred feet from the first crossing and returns again upon the plaintiffs' land. Wooden bridges were constructed at the crossings. Having been in use for a long time they were becoming unsafe, and it had become necessary to construct new bridges, or to obviate the necessity of bridges by cutting a channel along the plaintiffs' land and turning the creek through it. The company elected to adopt the latter course. To enable itself to cut such channel it proceeded, under the statute above cited, and caused to be condemned a strip of the plaintiffs' land. It paid the damages assessed, cut the channel, changed the course of the creek, took out the bridges and made a continuous embankment.

The plaintiffs contend that the defendant had no power to cause the land to be condemned; that the statute under which the proceedings were had is unconstitutional, and besides, that if it were constitutional, the case is not such a one as the statute contemplates. That part of the statute upon which the questions arise is in these words:

"SECTION. 1. In all cases where a railroad corporation, owning or operating a line of railroad within this State, would have the right, at this time, by procuring the right of way from the land-owner to dig a channel or cut a ditch in such a manner as to change and straighten the course of a stream too frequently crossed by its road, or to protect the right of way and road-bed, or promote the safety and convenience of the operation of the road, such railroad company may condemn the right of way as provided in the next section.

"SEC. 4. The true intent of this act is not to create in favor of a railroad corporation any additional right to divert a watercourse from its natural channel, but simply to give the right to condemn the land necessary for the right of way in all cases where, by conveyance to the railroad corporation, it would have the right to dig such channels or ditches."

Private property can be taken only for public use. The plaintiffs contend that the property in question was not taken for public use. They say that the evidence shows that it was taken merely for the private advantage of the defendant, it being less expensive to pay the assessed value of the land, and cut a ditch and straighten the stream, than to maintain two bridges.

1. PRACTICE: reinstating evidence.

It is not denied by the defendant that it was influenced by motives of economy, but it is insisted that the removal of the bridges, and construction of a continuous embankment, makes the road safer for the traveling public, and so it is said the use of the land taken is a public use.

Whether the road now is any safer than it was before is a question upon which the parties are not agreed; and we have to say that the question is not presented in such a way that we can properly determine it. The evidence was, on motion of the appellee, stricken out. It did not appear, at the time the motion was filed and ruled upon, that the evidence had ever been certified. It is true that a motion is now made to reinstate the evidence, and it is shown that the evidence is now certified. But it is not shown *when* it was certified. To justify us in reinstating the evidence, after it has once been stricken out, it should at least be shown to us that the evidence was certified within the time required by statute.

But it is insisted by the plaintiffs that, in the nature of the case, the land could not properly be said to be taken for public use. They say that the mere promotion of the safety of the traveling public is not a public use in such a sense as to authorize the exercise of the right of eminent domain. Their position is that to authorize the exercise of such right, the use must be necessary to the public, and they say that this court has held in *Stodghill v. C., B. & Q. R. Co.*, 43 Iowa, 31, that "such reasonable degree of safety as the public requires is secured upon railroads with bridges as well as without."

2. EMINENT domain: public use: diverting course of stream.

The public certainly travels upon railroads with bridges, and it would probably be difficult to show that an unusually large number of bridges in a given road has much, if any, tendency to divert the travel to other roads. We thought, therefore, in the case above cited, that a railroad company, in applying for the assessment of damages for a right of way, cannot ordinarily be presumed to apply for the right to divert a natural stream of water. Our idea as to what the traveling public requires, as indicated by what it does, cannot be allowed much influence in the determination of the question now before us. The traveling public incurs many dangers which doubtless, in the progress of science and legislation, will eventually be obviated. The statute in question is based in part upon the theory that the safety of the traveling public can sometimes be promoted by turning the course of a stream, and by saving thereby one or more bridges. That this theory is correct we have no doubt. We do not say that a bridge might not be built which would be as safe as a continuous embankment or road-bed. But it is not our province to inquire what might possibly be done. The legislature has not prescribed what kind of bridges railroad companies shall build. It has proceeded upon the theory that such as are built are not always as safe as a continuous embankment or road-bed. It did not undertake to determine where a bridge would be less safe than a continuous embankment or road-bed. It has assumed that there may be such cases, and it is not for us to say that there cannot be. If there may be, the court below may have found in this case that bridges, such as are commonly built, would not, at the places where bridges were taken out, be as safe as a continuous embankment or road-bed. In order to sustain the decision we are justified in assuming that the court so found. The safety of the traveling public then is promoted by what was done. The plaintiffs' land having been taken for such object, was, we think, taken for public use, and that, too, in such sense, as under the statute,

properly authorizes the exercise of the right of eminent domain.

Whether the statute was designed to authorize the exercise of such right, where merely the convenience and economy of the company would be promoted, we need not inquire. For the purposes of this opinion, it might be conceded, that if it was so designed, it would in its application to such a case, be unconstitutional. In its application to the case at bar, where the safety of the traveling public is promoted, we think it is not unconstitutional. In our opinion the plaintiffs' petition was properly dismissed

AFFIRMED.