F., E. & M. V. R. Co. v. Crum.

## Fremont, E. & M. V. R. Co. v. Margaret Crum.

### [Filed July 2, 1890.]

1. **Railroads:** Fires: Destruction of Timber: Measure of Damages. In an action by M. C., owner of premises adjacent to the right of way and track of a railroad, against the company for negligently permitting the fire, set out to clear its right of way of dry weeds and brush, to run over and beyond its right of way to adjacent premises, and to burn, injure, and destroy the natural growth of young trees and timber; and for negligently permitting the fires from its locomotives operating its railway to be communicated to adjacent premises and to burn, injure, and destroy the natural growth of young trees and timber, *held,* that the measure of damages is the amount of damage the trees and timber suffered by reason of the fire, and not the difference in the value of the land with the standing trees and timber before the fires and afterwards.

2. ———: ———: ———: ———. In determining the amount of damages, *held,* that the inquiry should be as to the value of the trees burned as standing timber, and not the market price for transplantation as shade or ornamental trees.

Error to the district court for Antelope county. Tried below before Norris, J.

*John B. Hawley,* for plaintiff in error, cited, on the contention that the measure of damages was the difference in value of land before and after fire: *B. & M. R. Co. v. Beebe,* 14 Neb., 463; *Drake v. R. Co.,* 63 Ia., 310; *Brooks v. R. Co.,* 34 N. W. Rep. [Ia.], 805; *Wallace v. Gooda'l,* 18 N. H., 456; *Longfellow v. Quimby,* 33 Me., 457; *Chipman v. Hibberd,* 6 Cal., 162; *Van Deusen v. Young,* 29 Barb. [N. Y.], 9; *U. S. v. Taylor,* 35 Fed. Rep., 488; *Chase v. R. Co.,* 24 Barb. [N. Y.], 273–5; *Blakeley v. R. Co.,* 25 Neb., 207; *F., E. & M. V. R. Co. v. Marley,* Id., 138; *Rhodes v. Baird,* 16 O. St., 573.

*Thos. O'Day, contra,* cited, in reply to the contention:

*Kolb v. Bankhead*, 18 Tex., 229; 3 Sutherland, Damages, pp. 375, 381; *Foote v. Merrill*, 54 N. H., 490; *Wingate v. Smith*, 20 Me., 287; *Wetherbee v. Green*, 22 Mich., 311; *Grant v. Smith*, 26 Id., 201; *Davis v. Easley*, 13 Ill., 192; *R. Co. v. Maley*, 40 N. W. R., 948; *Whitbeck v. R. Co.*, 36 Barb. [N. Y.], 644; *Stockbridge Iron Co. v. Cone Iron Wks.*, 102 Mass., 80; *Forsyth v. Wells*, 41 Pa. St., 291; *Maye v. Yappen*, 23 Cal., 306; *Robertson v. Jones*, 71 Ill., 405; *McLean Coal Co. v. Long*, 81 Id., 359; *Adams v. Blodgett*, 47 N. H., 219; *Goller v. Fett*, 30 Cal., 481; *Longfellow v. Quimby*, 33 Me., 457; Herman, Executions, pp. 160, 235-6, 524; *Whipple v. Foote*, 2 Johns. [N. Y.], 418; *Lanning v. R. Co.*, 27 N.W. Rep., 478; *Campbell v. Crone*, 10 Neb., 571; *Goodman v. Kennedy*, Id., 275.

COBB, CH. J.

The plaintiff below alleged "that the defendant is an incorporated railroad company, owning and operating its line in said county near the plaintiff's land, described in her petition as amended by leave of the court as the north half of the north half of section 9, township 25, range 7 west.

"I. That on April 6, 1887, the defendant carelessly and negligently omitted to keep its right of way free and clear of dry and combustible materials, but permitted a large quantity of dry grass and weeds to accumulate upon its track near the premises of plaintiff, and that the agents and servants of defendants entered thereon, and upon the plaintiff's premises adjacent thereto, and set out a fire which destroyed 2,431 trees living and growing upon her land, to her damage $729.30.

"II. That on April 7, 1887, the defendant carelessly and negligently omitted to keep its right of way free and clear of dry and combustible materials, and the agents and servants of defendant, in running its engine over its line

.of road at and near plaintiff's premises, negligently per-
mitted the engine to cast out sparks and coals of fire into
the dry grass and other combustible material on the de-
fendant's right of way, and on the plaintiff's premises
adjacent thereto, which caused a fire that spread to and
over the plaintiff's premises and land, described in her
amended petition as the east half of the southwest quar-
ter of section four, township twenty-five, range seven west,
and there burned up and destroyed 9,709 trees, living and
growing upon her land, without any fault or negligence on
her part, to her damage $2,912.70.

"III. That on October 6, 1887, the defendant carelessly
and negligently omitted to keep its right of way free and
clear of dry and combustible material, but permitted large
quantities of dry grass and weeds to accumulate upon its
track and right of way near the premises of plaintiff, and
permitted its servants and agents to enter thereon and upon
the premises of plaintiff, described in her amended petition
as the southeast quarter of the southeast quarter of section
four, township twenty-five, range seven west, in said county,
and set out a fire that burned and destroyed 7,278 trees,
living and growing on her said land and premises, without
any fault on her part, to her damage $2.183.40."

The defendant's answer admitted that it was a corpora-
tion and denied all other allegations in the premises.

There was a trial to a jury, with verdict and judgment
for the plaintiff for $2,751.30.

The defendant brings the case to this court on numer-
ous errors, the first three against the verdict and judgment,
fourteen as to instructions of the court either given to the
jury or refused, one to allowance of evidence over defend-
ant's objections, one to allowance by the court to plaintiff
to reopen the case and introduce evidence after argument
had been entered upon, one to allowance by the court to
plaintiff to amend petition after argument had been entered
upon, one to refusal by the court of defendant's motion for

continuance subsequent to the plaintiff's amendment, and one to the overruling of defendant's motion for a new trial.

There was evidence of damage to the growing trees of the plaintiff caused by three separate fires: the first, on April 6, 1887, by fire set out by section men in the employ of defendant engaged in burning off the right of way of defendant's track, escaping to and running over the plaintiff's timber land; the second, on April 7, 1887, was set out by sparks and coals escaping from one of defendant's engines, igniting the grass, weeds, and other combustible matter upon such right of way and track, running thence into plaintiff's timber land; and the third fire, on October 6, 1887, set out by sparks and coals escaping from one of defendant's engines, in like manner as the second, and running upon and burning the plaintiff's timber lands.

There was evidence that the first fire burned over and through and partially destroyed about forty acres of timber; that the second burned over and through and partially destroyed from thirty-five to forty acres of timber land, and that the third fire burned over and partially destroyed about ten acres.

A great deal of evidence is scattered through the 225 pages of the bill of exceptions, as to the quality and value of the timber destroyed by these fires. The plaintiff's husband testified, as to the first fire, that the trees were principally oak and white ash, in a good condition; that most of them had been trimmed up, the oak trees over twelve feet in height and of an average diameter of three to four inches. Upon cross-examination, the witness stated that of this timber there were some cottonwood, willow, and box-elder, but that the "principal heft of it" was white ash, and that portions of the ash trees grew in clusters, about half of them, some covering a rod and others five or six feet.

The plaintiff's son, D. C. McCartney, testified that the timber destroyed was ash, some few box-elder, and some

few of oak; that the oak did not amount to much, was mere bur-oak, such as we have in this county; that situate on the south side of the land they had trimmed, but did not know as to the north side. In answer to the "Q. State how the timber stood as to clusters," the witness answered: "I have counted some clusters with fourteen trees in them, and the biggest part of them were in clusters."

A. Bare testified that part of the ash trees grew single, and others in clusters of four to six feet in space.

The trees killed by the fires were examined and counted by the witnesses Bare, Yates, and Cooley, whose testimony was given. Yates testified that he counted 3,589 trees killed by the third fire; that he counted none under an inch in diameter, as instructed; that they were mostly ash, some oak, and would average three inches in thickness. Bare had counted 865 trees killed by the second fire, and 4,494 by the third, and 3,589 by the first, in all 8,948. George W. Cooley testified that he had examined and counted 490 of the trees killed by the first fire, and 5,215 by the second, and had counted none, thought to be killed, less than one inch in size, making a total of trees killed, as counted, of 18,242. These witnesses testified that each examined and counted the trees on ground separate from the others, and that neither went over the other's count.

The principal question of difficulty in the case arises from the application of the rule for the estimation of the plaintiff's damages. The plaintiff in error contends that the growing trees could only be regarded as a part of the realty, and that the measure of damages was the difference in the value of the land with the standing timber before the fire and afterwards. Were this rule conceded to be the true measure of damages, it is apparent that the plaintiff in error, having tried its case, submitted evidence, and procured the court to charge the jury upon a different principle, cannot now obtain a reversal for error of the court in

trying the case upon such other theory.   But I think that
the true measure of damages must be held to be the
amount of damage the trees suffered by reason of the fire.
 · The principal effort, by the plaintiff, seems to have been
to establish the value of the trees as living timber, and for
this purpose several witnesses were sworn as to the value
and price of shade trees in the town of Neligh, if sold
singly, or in very small quantities.   I am not prepared to
say that this evidence was entirely inadmissible.   It may
be gathered from the testimony that some of the trees
killed were susceptible of being taken up, carried to a dis-
tance, and transplanted for shade or ornamental trees.

   J. F. Merritt, one of the most intelligent of the plaintiff's
witnesses, having testified as to the sale of shade and orna-
mental trees in the market of Neligh, and having testified
as to his knowledge of, and familiarity with, the plaintiff's
premises, and the timber destroyed, stated, in answer to
the "Q. What were the prices of such trees in the year
1887?   A. I would explain that the most of those trees
are larger than those generally sold on the market, but the
smaller ones would be worth from $5 to $6 per dozen; a
great many of the trees were large and it would be im-
practicable to set them out."   They would therefore have
a value in whatever market they might reach in a live and
growing condition.   But it is obvious that such testimony,
without evidence of the cost and expenses of removing
and transporting the trees, would be insufficient for the
jury to fix their value growing in the forest on the banks
of the Elkhorn.   Even were this not so, it is established
by evidence that a comparatively small and indefinite
number of the trees, accounted killed, were susceptible of
being taken up and transplanted, or were of the quality and
growth required for transplanting.   So that the jury would
still be without accurate information for their verdict.

   Again, while it is in evidence that there was some de-
mand for shade and ornamental trees in that county, and

that such were being brought from a distance and sold there, yet the number of trees, such as those killed by the fires in question, throughout that and the adjoining counties was so great as to forbid the possibility of the plaintiff's finding a market for these trees at the retail prices testified to by her witnesses. It is to be regretted that none of them were examined, or testified, with a view of establishing the damage to the trees, as timber, by the fire, nor with a recognition of the fact that any of them possessed any value whatever after the fire had gone through the timber. But the jury were not left entirely without evidence as to their value for purposes to which they might be practically and conveniently applied, either before or after being damaged by fire.

James H. Smith, witness for defendant, testified that he is a farmer and land owner, resides in the same county with the plaintiff; is familiar with the land, timber, and trees in this suit, and owns eighty acres of similar land, covered with a similar growth of ash, oak, cottonwood, willow, and alder; had sold such trees for posts, ax handles, crutches, and the like, and that such were seldom sold for fuel, if alive; that, when dead, they were sold for fire-wood, and brought from one to two dollars per wagon load; that he had not used ash trees for posts when from four to five inches in size, but that they are so used from three to four inches; that dead ash, from two to three inches, is sometimes used for stays between posts in wire fence; that such timber for fire-wood is desired immediately after being killed, and of equal value after as before. This witness testified that some of the ash trees, four inches through, might make two fence posts, and such had been generally sold at fifteen cents each, but the cost to cut and sell them the witness could not say.

George H. McGee, witness for defendant, testified that for the last five or six years he had resided within three or four miles of the plaintiff, and is engaged in farming, survey-

ing, and milling; that he once owned the plaintiff's timber land, on which the fires occurred, and is acquainted with it, and with the timber on the Elkhorn throughout Antelope county; that the growth of timber such as that of the plaintiff's before the fire, of ash trees averaging from one to two inches thick, are worth from one to one and a half cents each; and young trees, from two to four inches, are worth five cents each, and willows two-thirds of that value, but larger ones about the same as ash.

Q. State, if you can, the difference in value of the trees in this burnt district just before and after the fire, classifying them as you have stated.

A. The smaller sizes, from one to two inches, would be almost wholly destroyed by the fire, the larger ones would be reduced in value not quite one-half.  By the larger size I mean from two to four inches; if larger than four inches, the damage would be less.

M. A. DeCamp, witness for defendant, resided in Antelope county for seventeen years; engaged in farming and stock raising; is acquainted with the plaintiff's land and timber damaged by fire; owns a quarter section of similar land adjoining plaintiffs; that an ash stick, such as the body of the ash trees of plaintiff's before the fire, four inches thick, is worth fifteen cents, if an inch less, ten cents; that for stove wood, such trees, after the fire, would not be much different in value; they could be used for posts and stays without much loss for those purposes.

Considering the value of this evidence, and estimating one-half of the number of trees, accounted as damaged, to be three inches in thickness and over, and so worth fifteen cents each, and that one-half of their value was destroyed by fire, the damage to that number would be...... $684 07

Estimating the other half at one and a half cents and their destruction complete, the damage would be........................................ 273 63

Total loss on 18,242 trees of all sizes is... $957 70

It is not deemed necessary to set out the instructions of the court of its own motion, or on motion of the defendant. I will be content with remarking that a careful examination of the instructions to the jury fails to suggest any serious error, and that the rule of damages set out in the ninth paragraph, "that the measure of damages is the actual value of such trees as you find from the evidence were injured or destroyed by the fire; and in making up your verdict you will deduct from the value of such, when standing and alone just previous to the fire, their value, if any, in a charred and burnt condition after the fire, and the remainder will be the amount of damage which the plaintiff is entitled to recover," is the proper rule, and meets my approval.

It is here to be remarked that in the fourteenth paragraph of instructions, asked by defendant, the court again instructed the jury substantially as in that of the ninth, of which the plaintiff in error complains.

It appears from the bill of exceptions that after the closing of the evidence, and the counsel on either side had addressed the jury, the counsel for defendant asked the court to instruct the jury to find for the defendant, on the ground that the plaintiff had not shown by the evidence that any one of the three fires alleged were upon the land described in the petition. Thereupon counsel for the plaintiff moved to reopen the case, to which defendant objected, and counsel stated that he would be unable to proceed with the trial if the case was then opened; which objection was overruled, the case was reopened and the plaintiff allowed to re-examine witnesses as to the locality of the railroad and that of the burned premises. To this ruling of the court, assigned as error, we see no reversible error in the action of the court; but it is not doubtful that it was within the discretion of the court, and tended to the impartial administration of justice and to the economy of litigation.

It also appears from the bill of exceptions that after the closing of the evidence the plaintiff moved to amend her petition so as to conform to the proof, in showing that the first fire occurred on the north half of section 9, instead of section 4, and that the second and third fires occurred on section 4 instead of section 9, in the same township and range; to which the defendant objected and moved that, in consideration that the plaintiff had been allowed to reopen her case, and to introduce new and important evidence, and also to amend her petition to conform to the proof, the jury be discharged and the cause continued; which motion of defendant was overruled.

The plaintiff also moved for leave to amend the first paragraph of her petition, the first cause of action, by inserting on the margin of the original, made so to read, the north half of the north half of section No. 9 ; to which the defendant objected, for the reason that the trial had been closed on both sides, and the arguments addressed to jury by each; which objection was overruled and the motion to amend the petition allowed.

By the same motion the plaintiff asked leave to amend the second paragraph of her petition, the second cause of action by inserting on the margin of the original, made so to read, the east half of southwest quarter of section 4; to which defendant objected for the reason that the amendment changes the nature of the cause of action and sets up a new cause of action after the evidence is closed and both parties rested, and the defendant prevented from meeting any new claims contained in the plaintiff's petition; which objection was overruled and the plaintiff's amendment was allowed.

On the same motion the plaintiff was allowed by the court to amend the third cause of action by inserting on the margin of her petition, so as to read, the southeast quarter of the southeast quarter of section 4, over the defendant's objections as before stated; which several rul-

ings of the court are assigned as errors to be reviewed. There is no reversible error in the court allowing these several amendments to the plaintiff's petition in the manner stated and excepted to, but the same was within its discretion as provided by the statute.

The errors assigned, (1) that the verdict is contrary to the evidence and is not sustained, (2) that it is contrary to law, and (3) that it is excessive, appearing to have been given under the influence of passion and prejudice so far as they relate to the amount of the verdict, are well taken. As has been shown, there was evidence before the jury to sustain a recovery for $957.70, and no more. For the reason of the excessive amount of the verdict the judgment will be reversed and the cause remanded for further proceedings unless the plaintiff shall, within sixty days from the filing of this opinion, enter a remittitur in this court, as of the date of the original judgment herein, for the sum of $1,793.60, but upon the entry of such remittitur within the time limited the judgment is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.