FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY v. CHARLES HARLIN.

FILED FEBRUARY 16, 1897. No. 7108.

1. **Railroad Companies:** NEGLIGENCE IN CONSTRUCTING DITCHES: PLEADING. A plaintiff alleged in his petition that the defendant, a railroad company, carelessly and negligently constructed its ditches along its track through the lands of plaintiff, in such a manner as to cause the surface waters to collect in said ditches and be precipitated on plaintiff's land, whereby certain of his crops were destroyed, certain of his trees growing on said land

were destroyed, and his land was depreciated in value by the deposit thereon of clay and sand. *Held,* (1) That because of the general allegation of the railroad company's negligence in constructing its ditches, the petition was open to a motion to make more definite and certain; (2) but that the general allegation of negligence was good as against a demurrer, and, therefore, the petition stated a cause of action.

2. **Eminent Domain**: CONVEYANCE TO RAILROAD COMPANY: RELEASE OF DAMAGES: CONSTRUCTION OF DITCHES: NEGLIGENCE: MEASURE OF DAMAGES. A land owner conveyed to a railroad company a right of way across his land. The conveyance contained the following release: "For the consideration aforesaid do hereby release and discharge the said party of the second part, its successors and assigns, from all costs and damages which the said party of the first part has now sustained, or shall at any time hereafter sustain, in any way by reason of the construction, building, or use of the said railroad." The railroad company afterwards built its road on the right of way purchased, and in so doing constructed thereon certain ditches for the purpose of draining its road-bed. Subsequently the land owner conveyed his land to the defendant in error and he sued the railroad company for damages, alleging that said ditches were negligently constructed, and by reason thereof they conducted the surface waters collected therein on his land, destroyed certain of his crops, certain of his trees, and injured his land by depositing sand and clay thereon. The railroad company pleaded the release in the right of way deed in bar of the action. *Held,* (1) That if the release would estop the original owner had he retained the land and brought this action, it would likewise estop the defendant in error; (2) that the true construction of the release is that by it the land owner acknowledged satisfaction for the value of all the land appropriated by the railroad company for its right of way, and released and discharged it from all damages which the remainder of his land had sustained, or would sustain, by reason of the non-negligent construction, maintenance, and operation of its road across the lands for all time; (3) that the release should be given the same effect as if it were a judgment rendered in a condemnation proceeding instituted by the railroad company for right of way over the land; (4) that in such a judgment, and therefore in the release, were not included damages for injuries that might afterwards arise as the results of a negligent construction, maintenance, or operation of the road; (5) that it was not within the contemplation of the parties to the right of way deed, at the time it was executed, that the railroad company would negligently construct, maintain, or operate its road; (6) that had the right of way been obtained by condemnation the land owner in that proceeding could not have been awarded damages upon the theory that he might in the future sustain injury by reason of the railroad company's negligently constructing, maintaining, or operating

its road; (7) that the defendant in error's cause of action arose
when the injury sued for occurred, and not when the ditches were
completed; (8) that whether the ditches were properly and skill-
fully constructed for railroad purposes was not the material issue
in the case; (9) and if so constructed, that of itself did not afford
the railroad company a complete defense to the action, as the ma-
terial issue in the case was whether the railroad company had so
constructed its ditches as to unnecessarily and negligently injure
the defendant in error; (10) that the measure of the defendant in
error's damages was the value of his crops destroyed, the value of
his trees destroyed, and the difference in the value of his land im-
mediately before and after the depositing of the sand and clay
thereon.

3. Railroad Companies: DRAINAGE: NEGLIGENCE: DAMAGES: INSTRUC-
TIONS. In addition to a general denial that the defendant in error
had sustained any damages and that it had been guilty of any
negligence in constructing its ditches the railroad company inter-
posed the defense that the damages claimed resulted from a rain
storm so unprecedented as to amount to the act of God. The dis-
trict court instructed the jury that if the railroad company had
failed to establish by a preponderance of evidence the defense in-
terposed they should find for the defendant in error. *Held*, That
the giving of the instruction was reversible error.

ERROR from the district court of Saunders county.
Tried below before BATES, J.   *Reversed.*

See opinion for references to cases.

*William B. Sterling* and *J. E. Frick*, for plaintiff in error.

*C. Hollenbeck, contra.*

RAGAN, C.

Charles Harlin brought this suit in the district court of
Saunders county against the Fremont, Elkhorn & Mis-
souri Valley Railroad Company, hereinafter called the
railroad company, to recover damages which he alleged
he had sustained by reason of the destruction of certain
of his crops, certain trees growing upon his land, and by
reason of the deposit on his land of quantities of debris,
all caused by the negligence of said railroad company in
constructing certain ditches on its right of way in such
a manner as to cause the waste and surface waters to be

collected in said ditches and precipitated on his land.
Harlin had a verdict and judgment and the railroad com-
pany prosecutes here a petition in error.

1. The first point argued in the brief is that the petition
does not state facts sufficient to constitute a cause of ac-
tion.  The petition, so far as material here, is as follows:
"That the defendant    *    *    carelessly and negligently
constructed its ditches along    *    *    *    said railroad
track    *    *    *    through the lands of plaintiff    *    *    *
in such a manner as to cause the waste and surface waters
to collect along and adjoining the said railroad.track,
and to lead and precipitate the same directly on and over
the adjoining lands of plaintiff; that during the years
1889 and 1890 the water so precipitated and turned from
its natural course over upon said lands of plaintiff to-
tally destroyed large portions of crops of corn and pota-
toes then growing upon said land and the property of
plaintiff; and during the year 1891, by reason of the said
careless and negligent construction of said ditches, large
quantities of clay and sand were carried by the water
from said ditches over and upon the lands of said plaint-
iff, totally destroying the crops of potatoes and corn then
standing and the property of said plaintiff; and by rea-
son of the depositing of said sand and clay on said land
a large number of trees standing and growing thereon
were totally destroyed, and a large quantity of said land
was greatly and permanently damaged, so as to be unfit
for the production of crops."   The averments of this peti-
tion do not disclose the particular acts or omissions of the
railroad company in constructing its ditches which the
pleader alleges were negligent.   It is not averred that
the railroad company was guilty of negligence because
it constructed ditches, or in constructing them where it
did; nor that they were too narrow or too shallow.   The
allegation of negligence is a general one, and had a mo-
tion been made to require the pleader to specifically state
in what the negligence of the railroad company consisted
it would doubtless have been sustained.   But a general

allegation of negligence is good against a demurrer; and under such an allegation evidence of any fact which contributed to the injury sued for is competent and relevant. (*Omaha & R. V. R. Co. v. Wright,* 47 Neb., 886.) We think, therefore, that the petition states a cause of action.

2. At the time the railroad company constructed its road over the lands of plaintiff they were owned by a man named Shannon, the plaintiff's grantor. Before the construction of the road over the lands Shannon, for a valuable consideration, conveyed to the railroad company a right of way over his lands. In this conveyance occurs the following: "For the consideration aforesaid do hereby release and discharge the said party of the second part [the railroad company], its successors and assigns, from all costs and damages which the said party of the first part has now sustained or shall at any time hereafter sustain in any way by reason of the construction, building, or use of the said railroad." On the trial of this case the railroad company offered in evidence, under proper pleadings, this right of way deed. It was excluded and this action of the district court, it is now insisted, was erroneous. The contention is that this was a release to the railroad company by Shannon of all damages which he had or might afterwards sustain by reason of the construction and operation of this road over his lands; that the release would bar this action were it brought by Shannon, and that the release is likewise binding upon his grantee. We agree with counsel for the railroad company that if this release would bar Shannon from maintaining this action, it likewise precludes his grantee, as the latter took the land burdened with the railroad company's easement, and he cannot maintain any action against the railroad company for damages growing out of the construction, operation, or maintenance of this road that his grantor could not maintain had he continued the owner of the land. The question, therefore, is whether the release in the right of way deed would bar this action had it been brought by Shannon.

The question is an important one, and to sustain his theory counsel for the railroad company have cited us to the following authorities:

*Hoeffditz v. Southern P. R. Co.*, 18 Atl. Rep. [Pa.], 125. In this case Hoeffditz, for a valuable consideration, released and discharged a railroad company and its successors from all suits, claims, demands, and damages whatever by reason of its entry upon his land and appropriating a part thereof towards the construction of its railroad and works connected therewith. At the time of executing the release the railroad company had erected on the land acquired from Hoeffditz an embankment, in which was a culvert. Subsequently Hoeffditz sued the railway company for damages caused by the water which passed through this culvert; and the court held that the release was a bar to the action.

*Updegrove v. Pennsylvania S. V. R. Co.*, 19 Atl. Rep. [Pa.], 283, is very much like the case at bar. Updegrove, for a consideration, deeded the railway company the right of way over his land, and released it from all claims for damages by reason of the taking and using of the lands for its railroad, or by reason of the construction and maintenance of its road over said land. The release appears to have been executed before the road was built, and the court held that this release barred Updegrove's action against the railroad company for damages caused by an overflow of water which resulted from the construction of a ditch and culvert on the right of way. The court based its decision upon the proposition that the damages sued for were in contemplation of the parties at the time of the execution of the right of way deed. In other words, that the damages sued for entered into and formed a part of the consideration paid by the railroad company for the right of way.

In *Radke v. Minneapolis & St. L. R. Co.*, 43 N. W. Rep. [Minn.], 6, Radke sued the railroad company for damages to his land caused, as he alleged, by the negligent construction of its railroad over or near his land. The neg-

ligence complained of was that the railroad company
neglected to put a culvert in an embankment. After the
embankment was constructed Radke, for a consideration,
conveyed to the railroad company a right of way over
his land. But the right of way deed contained no re-
lease of damages. The court, however, held that the
absence of this release from the right of way deed was
unimportant, and said: "When he conveyed the premises
to the defendant he knew that there was no culvert
through the embankment   *   *   where he now claims
it should be placed in order to carry the water off his
land, and he knew that the railroad embankment had
already stopped the flow of water. It cannot affect the
case that he may not then have apprehended the full
extent of the injury which would result from this in
future." To the same effect are *McCarty v. St. Paul, M. &
M. R. Co.*, 17 N. W. Rep. [Minn.], 616; *Milwaukee & N. R.
Co. v. Strange*, 23 N. W. Rep. [Wis.], 432.

In *Chicago, R. I. & P. R. Co. v. Smith*, 111 Ill., 363, the
owner of certain land conveyed to the railroad company
a right of way across the same. The deed recited, "For
the purpose of constructing a railroad, and for all pur-
poses connected with the construction and use of said
railroad," and the court held that the right of way deed
was a bar to an action by the owner's grantee against the
railroad company for damages caused to his property by
its engines throwing smoke, cinders, ashes, and sparks
of fire thereon, and by the shaking of the house on said
premises. But it is to be observed that the damages
claimed resulted from the usual and ordinary operation
of the road. Smith did not claim that the damages re-
sulted from the negligent operation of the road; and the
case rests upon the principle that when anything is
granted, all the means to attain it and all the fruits and
effects of it are granted also; and the court correctly
held that the shaking of the house and the smoke, cinders,
and ashes thrown by passing engines were necessarily
incident to and inseparable from the operation of the

railroad, and were conclusively presumed to have been adjusted and settled by the consideration paid by the railroad company to the original owner at the time he executed the right of way deed. The case is not an authority for the contention of the railroad company in the case at bar. To the same effect are *Chicago & E. I. R. Co. v. Loeb*, 8 N. E. Rep. [Ill.], 460; *Chicago & E. I. R. Co. v. McAuley*, 11 N. E. Rep. [Ill.], 67.

In *St. Louis, V. & T. H. R. Co. v. Hurst*, 14 Ill. App., 419, it seems that the railroad company constructed its road over the land of Hurst. At or before this time, for a consideration, Hurst conveyed to the railroad company a right of way deed over his lands, and in this deed he released and relinquished all claims for damages by reason of the location, completion, and construction of the road. Years after the road had been completed and in operation the railroad opened a ditch by the side of its track, and Hurst claimed that the construction of this ditch changed the natural channel and flow of water and caused the same to flow upon his land, to his damage, for which he brought suit. On the trial the railroad company offered the right of way deed in evidence. The trial court excluded it and on appeal its action in this respect was reversed. The court seems to have placed its ruling upon the ground that the railroad company was entitled to have the jury say as a matter of fact whether the construction of the ditch complained of was a necessary act in the proper maintenance of the road, and held that if the construction of the ditch was necessary to the maintenance and operation of the road, that the release was a bar to the action; and said that before Hurst could recover damages he must make it appear that the acts of the railroad company amounted to a departure from or were not embraced within the purposes for which the release was made. This case is an authority so far as it goes against the contention in support of which it is cited.

Of these authorities the cases from Pennsylvania and Minnesota only, we think, can be said to sustain the

proposition contended for by counsel for the railroad company here. But our construction of this right of way deed is that by it Shannon acknowledged satisfaction for the value of all the land appropriated of his by the railroad company for its right of way, and released and discharged the railroad company from all damages which the remainder of his land had sustained or would sustain by reason of the non-negligent construction, maintenance, and operation of the road across his lands for all time. This right of way deed must be read, construed, and given the same effect that we would give to a judgment rendered in a condemnation proceeding instituted by the railroad company for right of way over Shannon's land; and had the railroad company pleaded and offered in evidence such a judgment instead of this right of way deed, the question would have been whether the damages sought to be recovered in this action were embraced in the condemnation judgment. It was not within the contemplation of the parties to this right of way deed that the railroad company would negligently construct, maintain, or operate its road; and if in the trial of the condemnation proceedings Shannon had sought to recover damages from the road upon that theory he could not have done so.

In *Delaware, L. & W. R. Co. v. Salmon*, 39 N. J. Law, 299, it was held: "A conveyance of land for railroad purposes or an assessment of the value of lands taken and damages under proceedings to condemn only bars the recovery of such damages as naturally and necessarily arise from the use of the premises for the authorized purpose; and will not bar the recovery of damages for injuries arising from an unskillful or improper construction or negligence in operating the road. For such damages the remedy by action remains notwithstanding the conveyance or condemnation."

In *King v. Iowa M. R. Co.*, 34 Ia., 458, it was held that in a proceeding to appropriate land for a right of way of a railroad already constructed, evidence of damages result-

ing from defective construction or the like is not admissible.    While such damages may furnish cause of action to recover the same in an action therefor, they are not to be considered in assessing the compensation to be allowed the owner for the right of way appropriated.

In *Stodghill v. Chicago, B. & Q. R. Co.*, 43 Ia., 26, Stodghill sued the railroad company for damages for diverting a stream of water from its natural course, thus preventing it from flowing upon his land and depriving him of the use of the stream.    The railroad company interposed as a defense that before it built its road over Stodghill's land it acquired from him, for a valuable consideration, the right of way; that its right of way passed over a creek, and that when it constructed its road it built a bridge over this creek; that some eight years afterward, on account of an increase of business and for the safety of travel, it took out the bridge and built a fill across the creek.    The supreme court said: "As it is not claimed by appellant that greater rights were acquired by the plaintiff's deed than would have been acquired by proceedings in condemnation, we shall assume for the purposes of this opinion that they were the same.    The question, then, which we are called upon to decide is this: Are the damages resulting to the land owner from the diversion of a natural stream of water, where such diversion is required by good railroading and a reasonably prudent construction of the road-bed, to be regarded as having entered into and been covered by the condemnation and appraisal?" and held that the right of way deed was not a bar to the action.

*Hunt v. Iowa C. R. Co.*, 52 N. W. Rep. [Ia.], 668, is a case almost identical with the one at bar.    Hunt sued the railroad company for damages sustained by him, as he alleged, by reason of its negligently constructing a ditch on its right of way, whereby surface waters destroyed his crops and deposited debris upon certain of his land and depreciated its value.    The ditch complained of was constructed at the time the road was built across Hunt's

land, and at this time another party owned the land. It
does not appear whether the railroad acquired its right of
way over the land by condemnation proceedings or by
conveyance from the owner; but the case was tried and
finally considered by the supreme court upon the theory
that the railroad company at the time it built its road
and constructed the ditch complained of did so in pur-
suance of a right of way granted to it for that purpose
by the then owner of the land. The railroad company
insisted that the damages sued for were such as the law
conclusively presumes were included in the amount paid
by the railroad company originally for its right of way.
But the supreme court said: "From these facts we think
it is clear that the damage sued for herein cannot be said
to have been considered and settled for in condemnation
proceedings." The court then cited *Drake v. Chicago, R.
I. & P. R. Co.*, 63 Ia., 308, and *Sullens v. Railroad Co.*, 74 Ia.,
659, and continued: "It is well settled that in assessing
damages to the land owner for right of way taken, regard
is had only to the immediate consequences of the appro-
priation. The owner is not, in such proceedings, compen-
sated for damages which may thereafter result from neg-
ligent acts of the company committed after it makes the
appropriation;" and after citing *Fleming v. Chicago, D. &
M. R. Co.*, 34 Ia., 353, *King v. Iowa M. R. Co.*, 34 Ia., 458,
*Miller v. Keokuk & D. M. R. Co.*, 63 Ia., 680, continued:
"The plaintiff's grantor had a right to presume, when he
conveyed the land to the company that built the road,
that the work of constructing the road would be properly
done; that sufficient culverts for the passage of surface
water, at proper places, would be put in and maintained.
*  *  *  By neglect and carelessness on part of the de-
fendant, surface water from several hundred acres of land
*  *  *  was gathered in the ditches of defendant, car-
ried along, and finally discharged upon her [the plaint-
iff's] land. Damages arising from such an act have never
been held to be included in the price paid for right of
way." This has long been the doctrine of this court.

In *Burlington & M. R. R. Co. v. Schluntz*, 14 Neb., 421, it was held: "An award of damages under the statute for right of way for a railroad embraces only those damages which may reasonably be anticipated upon the assumption that the road will be built and operated with due care and skill, and with no unnecessary injury to property outside of the right of way." To the same effect see *Omaha Southern R. Co. v. Todd*, 39 Neb., 818, and *Chicago, B. & Q. R. Co. v. O'Connor*, 42 Neb., 90.

The district court did not err in excluding the right of way deed from the jury.

3. The next argument is that the court erred in refusing to give to the jury an instruction, at the request of the railroad company, to the effect that though they found that the ditches of the railroad company were negligently constructed, and that by reason thereof Harlin had sustained injury as claimed by him, still, if they further found that the ditches were constructed and completed more than four years immediately preceding the commencement of this action, they should find for the defendant. In other words, the instruction was a request to the court to hold that Harlin's action was barred by the statute of limitations, as the evidence is undisputed that the ditches were constructed and completed more than four years before this suit was brought. The contention of counsel for the railroad company is that the cause of action made the subject of this suit was the negligent construction by the railroad company of its ditches, and that that cause of action arose when the ditches were completed. To sustain this contention we are cited, among others, to the following authorities:

*City of North Vernon v. Voegler*, 2 N. E. Rep. [Ind.], 821. In that case the city, by improving or grading one of its streets, changed the flow of the surface water so as to gather it into a channel and pour it upon Voegler's lots. For this he sued the city for damages, alleging that its negligent grading of the street had injured and depreciated his real estate. He recovered a judgment. Sub-

sequently another overflow occurred and he again sued the city, but the court held that the judgment in the first action was a bar to the second, as all damages which Voegler has sustained to his real estate, both past and prospective, could have been recovered in the first action. The court treated the case as though both the actions brought by Voegler were for the permanent depreciation in value of his real estate by reason of the manner in which the city had improved its street. It is needless to remark that that is not this case.

Another case cited in support of the contention under consideration is *Baldwin v. Oskaloosa Gas Light Co.*, 10 N. W. Rep. [Ia.], 317. There Baldwin sued the gas light company for damages for maintaining its gas works in the immediate vicinity of his premises. The jury found that the gas works were permanent and the court held that this was equivalent to a finding that the injury was permanent, and that, therefore, Baldwin's cause of action accrued when the gas works were first located and that consequently his action was barred by the statute of limitations. To the same effect is *Stodghill v. Chicago, B. & Q. R. Co.*, 5 N. W. Rep. [Ia.], 495.

Another case cited by counsel is *Chicago & A. R. Co. v. Maher*, 91 Ill., 312. In that case the railroad company placed a protection to a drawbridge in a river and thus permanently depreciated the value of an adjoining lot. The owner of the lot subsequently conveyed it to Maher and she sued the railroad company for damages which the real estate had sustained by reason of the improvement which the railroad company had made adjoining her lot. But the court held that the injury caused to the real estate was permanent in its character, and the cause of action sued for arose when the improvement was first constructed. In other words, that the plaintiff's cause of action was the amount that her lot had been depreciated in value by reason of the improvement placed in the river adjoining it by the railroad company, and that this depreciation took place, this injury and this damage

accrued, at the time the improvement was erected.   And this seems to be the principle upon which all the cases cited by counsel for the railroad company to support the contention under consideration rest; and such is the doctrine of this court, as announced in *Chicago, B. & Q. R. Co. v. O'Connor*, 42 Neb., 90.   And the principle that controls the case just cited is the same principle that controls the case at bar, namely, that the right of action accrued when the injury happened. (See *Omaha & R. V. R. Co. v. Standen*, 22 Neb., 343; *Cedar Lake Hotel Co. v. Cedar Lake Hydraulic Co.*, 48 N. W. Rep. [Wis.], 371.)

One of the defenses interposed in *Hunt v. Iowa C. R. Co., supra*, was the statute of limitations.   It will be remembered, in that case Hunt claimed damages because of the negligent construction by the railroad company of certain ditches on its right of way, whereby the surface water overflowed his land and destroyed his crops.   The ditches were constructed more than five years before the action was brought.   The court said: "It is clear that plaintiff herein could not have maintained an action until some actual injury was caused to her by diversion of the water by defendant.   There is here no claim of any such injury until 1888—less than two years prior to the commence- ment of this action.   True, the evidence shows various overflows of plaintiff's land prior to that, but if they caused any injury, no damage is claimed for it."

In *St. Louis, I. M. & S. R. Co. v. Biggs*, 12 S. W. Rep. [Ark.], 331, the court held that where a railroad company constructs its road-bed so that at times it causes overflow to adjoining lands, there may be as many recoveries as there are successive injuries, and the statute of limita- tions begins to run on the happening of the injury com- plained of, and not from the construction of the railway.

In *Austin & N. W. R. Co. v. Anderson*, 15 S. W. Rep. [Tex.], 484, it was said that in an action against a railroad company for damages caused by occasional overflows of surface water, which has been diverted from its natu- ral channel by the construction of its road, the statute

of limitations does not begin to run from the construction of the road, but from the occurrence of each overflow, since each overflow constitutes a separate cause of action.

The court did not err in refusing to give the instruction requested.

4. The next argument is that the court refused to instruct the jury, on behalf of the railroad company, to the effect that if the jury found that the ditches were properly constructed with reference to the use of the same for railway purposes, that they should find for the railroad company. Of this instruction we remark, first, that the railway company was not prejudiced by the court's refusal to give it, as the court had already, at the request of the railroad company, instructed the jury to the effect that the railroad company could not be held liable if the ditches as constructed were properly constructed for railway purposes. Certainly the railroad company was not entitled to this instruction. The material issue on trial was not whether the ditches were sufficient and proper for the draining of the railroad company's right of way and road-bed, but the material issue was whether the railroad company had so constructed its ditches as to unnecessarily and negligently injure the property of its neighbor. The instruction under consideration refused by the court, if given, would have made the case turn on an immaterial issue. A railroad company might construct a bridge, an embankment, a culvert, or a ditch sufficient for the maintenance and operation of its road, and one entirely proper for that purpose, and yet the improvement made might be of such a character as to unnecessarily and negligently injure the property of an adjoining proprietor. A lot owner might construct a conduit across his lot in such a manner as to gather all the rains and melting snows and carry them off. This conduit might be properly constructed for the purpose for which it was intended; the highest degree of care and skill may have been exercised by the lot owner in its building, and it may have subserved in the most satisfac-

tory manner the ends for which it was built, and yet the operation of this conduit might injure the property of the lot owner's neighbor, and if it did the lot owner, when called upon by his neighbor for damages, could not successfully defend by saying: "The conduit is properly constructed for the purpose for which I intended it." This is not a suit in which the plaintiff claims damages because the railroad company did not properly construct its ditches for railroad purposes, but the principle upon which this action rests is that the railroad company, in the lawful possession and use of its property, so used and managed it as to unnecessarily and negligently inflict an injury upon its neighbor.

In *McCleneghan v. Omaha & R. V. R. Co.*, 25 Neb., 523, this court said: "A railroad company must construct its road not only with reference to the safety of the traveling public, but also with reference to the rights of adjacent land owners." The following cases rest on the same principle: *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897; *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb., 526; *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138; *Jacobson v. Van Boening*, 48 Neb., 80.

But it is said in support of the contention under consideration that this court has ruled, in *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb., 406, that if an improvement made by a railway company in the construction, operation, or maintenance of its road is properly made for railroad purposes, then if another sustain damages by reason of such improvement or the manner in which it is constructed or maintained he is without remedy. Once more we disclaim having ever consciously so held; and once more call attention to the fact that we do not so understand the *Morrissey Case*. As we said in *Jacobson v. Van Boening, supra*, an examination of the *Morrissey Case* discloses that we had in view the fact that there was neither pleading nor proof that the railroad embankment which caused the injury sued for in that action had been unnecessarily or negligently constructed; that is, the evidence did not

show that the embankment complained of was negligently constructed for railroad purposes; nor that the railroad company, by constructing the embankment that it did, in the manner that it did, unnecessarily and negligently caused the injury sued for. The embankment was properly constructed for railroad purposes, and the manner of its construction was not a negligent one with reference to Morrissey.

5. As already stated, in the action at bar Harlin claimed damages for the destruction of certain of his crops, for the destruction of certain trees growing upon his land, and for damages to certain portions of his land caused by the deposit of sand and clay thereon. With reference to the measure of Harlin's damages, the court instructed the jury that he was entitled to recover the value of the crops destroyed, the value of the trees killed; and that the measure of his recovery for the damage to his land was the difference between its value immediately before and immediately after the debris was deposited thereon. It is now insisted that the court adopted an improper measure of damages. The instruction was correct. (See *Fremont, E. & M. V. R. Co. v. Crum*, 30 Neb., 76; *Kansas City & O. R. Co. v. Rogers*, 48 Neb., 653.)

6. In addition to a general denial that Harlin had sustained any damages, and that it had been guilty of any negligence in constructing its ditches, the railroad company interposed the defense that if Harlin had sustained damages, as he claimed, that they resulted from a rain storm so unprecedented as to amount to the act of God. The district court, upon its own motion, instructed the jury that the burden of proof was upon the railroad company to establish this defense by a preponderance of evidence, and "if the defendant has failed to prove the above material allegation by a preponderance of the evidence, or the evidence is evenly balanced thereon, then you should find for the plaintiff." This instruction was excepted to and its giving is assigned as error. It is needless to say that the instruction was erroneous. The bur-

·den was upon the railroad company to establish this defense by a preponderance of the evidence; but even if the railroad company failed to establish the defense interposed by it, it did not follow that Harlin was entitled to recover. A careful examination of the entire charge of the court constrains us to the conclusion not only that the instruction was erroneous, but that its giving was prejudicial to the railroad company, and for the giving of this instruction the judgment of the district court must be reversed.

REVERSED AND REMANDED.

IRVINE, C., dissenting as to measure of damages as to trees destroyed.