CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V.
OLIVER EMMERT.

FILED DECEMBER 22, 1897.   No. 7578.

1. **Railroad Companies: EMBANKMENTS: NEGLIGENCE: TIME ACTION ACCRUES.** Where an injury to the crops and lands of one is caused by the negligent construction of a railway embankment, which arrested and held upon said lands the flood waters of a natural stream, such party's cause of action accrues at the date of the injury and not at the date of the negligent construction of the improvement.

2. ———: ———: INJURY TO CROPS: MEASURE OF DAMAGES. In such case the injured party's measure of damages to his crops is their fair value at the time of their destruction; and his measure of damages as to his land is the difference in its value immediately before and after such flooding.

3. **Surface Water.** This court does not attempt a definition of surface water. Whether or not it is such should be determined from the facts of the case in which the question is presented.

4. ———. The flood water of the Nemaha river involved in this case *held* not to be surface water, but a constituent part of such stream, —a natural water course.

5. **Special Damages: PLEADING.** Special damages to be recovered must be specially pleaded.

6. **Waters: DAMAGES: EVIDENCE.** The ruling of the district court in the admission and rejection of evidence as to the plaintiff's measure of damages examined and *held* prejudiciously erroneous.

7. ———: ———: PLEADING. An allegation that the plaintiff's farm has been damaged by the construction of a railway embankment near thereto, because the farm has thus come to be known in the neighborhood as one liable to overflow, does not state a cause of action.

ERROR from the district court of Richardson county. Tried below before BUSH, J.   *Reversed.*

The opinion contains a statement of the case.

*J. W. Deweese* and *F. E. Bishop,* for plaintiff in error:

The railroad company acquired the right to build its railroad where it did, and constructed it in a manner

proper for railroad purposes. The injuries complained of resulted from surface waters, and the company did not incur liability for the damages. (*Bunderson v. Burlington & M. R. R. Co.,* 43 Neb. 545; *Missouri P. R. Co. v. Lewis,* 24 Neb. 848; *Hannaher v. St. Paul, M. & M. R. Co.,* 37 N. W. Rep. [Dak.] 717; *Morrissey v. Chicago, B. & Q. R. Co.,* 38 Neb. 406; *Hoard v. City of Des Moines,* 17 N. W. Rep. [Ia.] 527; *McCormick v. Kansas City, St. J. & C. B. R. Co.,* 57 Mo. 438; *Bell v. Norfolk S. R. Co.,* 36 Am. & Eng. R. Cas. [N. Car.] 652; *Chicago & A. R. Co. v. Benson,* 20 Am. & Eng. R. Cas. [Mo.] 102; *Abbott v. Kansas City, St. J. & C. B. R. Co.,* 83 Mo. 271; *Moyer v. New York C. & H. R. R. Co.,* 88 N. Y. 355; *Johnson v. Chicago, St. P., M. & O. R. Co.,* 80 Wis. 641; *Shelbyville & B. T. Co. v. Green,* 99 Ind. 205; *Wilson v. Bumstead,* 12 Neb. 1; *Ogburn v. Connor,* 46 Cal. 346; *McDaniel v. Cummings,* 23 Pac. Rep. [Cal.] 797; *Collier v. Chicago & A. R. Co.,* 48 Mo. App. 399; *Taylor v. Fickas,* 64 Ind. 173; *Baltimore & O. R. Co. v. Sulphur Springs Independent School District,* 2 Am. & Eng. R. Cas. [Pa.] 169.)

In building embankments on the right of way, railroad companies have the rights of a land owner with reference to obstructing surface water, and may obstruct the flow upon their land, or turn the water back onto the land of others, without incurring liability for damages. (*O'Brien v. City of St. Paul,* 25 Minn. 331; *Hogenson v. St. Paul, M. & M. R. Co.,* 31 Minn. 226; *Pye v. City of Mankato,* 36 Minn. 373; *Alden v. City of Minneapolis,* 24 Minn. 262; *Chicago, K. & N. R. Co. v. Steck,* 33 Pac. Rep. [Kan.] 601; *Missouri P. R. Co. v. Renfro,* 34 Pac. Rep. [Kan.] 802; *Missouri P. R. Co. v. Keys,* 40 Pac. Rep. [Kan.] 277; *Brown v. Winona & S. W. R. Co.,* 55 N. W. Rep. [Minn.] 123; *New York C. & St. L. R. Co. v. Speelman,* 40 N. E. Rep. [Ind.] 541; *Edwards v. Charlotte, C. & A. R. Co.,* 18 S. E. Rep. [S. Car.] 58; *Champion v. Town of Crandon,* 84 Wis. 405; *Anheuser-Busch Brewing Ass'n v. Peterson,* 41 Neb. 904; *O'Connor v. Fond du Lac, A. & P. R. Co.,* 52 Wis. 526; *Walker v. Old Colony & N. R. Co.,* 103 Mass.

10; *Gould v. Booth*, 66 N. Y. 62; *Pflegar v. Hastings & Dakota R. Co.*, 28 Minn. 510; *Omaha & R. V. R. Co. v. Moschel*, 38 Neb. 281; *Chicago, B. & Q. R. Co. v. O'Connor*, 42 Neb. 90; *Bell v. Norfolk S. R. Co.*, 36 Am. & Eng. R. Cas. [N. Car.] 651; *Blakeley v. Chicago, K. & N. R. Co.*, 25 Neb. 207.)

Plaintiff's cause of action, if he has any, arose at the time the road was built, and is, therefore, barred by the statute of limitations. (*Chicago & E. I. R. Co. v. Loeb*, 27 Am. & Eng. R. Cas. [Ill.] 415; *Chicago & A. R. Co. v. Maher*, 91 Ill. 312; *Kansas P. R. Co. v. Mihlman*, 17 Kan. 224; *Smith v. Point Pleasant & O. R. R. Co.*, 23 W. Va. 451; *Powers v. City of Council Bluffs*, 45 Ia. 652.)

There were erroneous admissions of evidence as to the measure of damages. (*Drake v. Chicago, R. I. & P. R. Co.*, 17 Am. & Eng. R. Cas. [Ia.] 49; *Ward v. Chicago, M. & St. P. R. Co.*, 63 N. W. Rep. [Ia.] 1104; *Fremont, E. & M. V. R. Co., v. Marley*, 25 Neb. 145; *Sullens v. Chicago, R. I. & P. R. Co.*, 74 Ia. 666; *Gentry v. Richmond & D. R. Co.*, 16 S. E. Rep. [S Car.] 893; *Chase v. New York C. R. Co.*, 24 Barb. [N. Y.] 273.)

*Reavis & Reavis* and *C. Gillespie, contra.*

References: *Drake v. Chicago, R. I. & P. R. Co.*, 19 N. W. Rep. [Ia.] 215; *O'Connell v. East Tennessee, V. & G. R. Co.*, 4 Am. R. & C. Rep. [Ga.] 448; *Fremont, E. & M. V. R. Co. v. Crum*, 30 Neb. 70; *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb. 138; *Omaha & R. V. R. Co. v. Standen*, 22 Neb. 343.

RAGAN, C.

The Nemaha river is one of the natural water courses of the state, and drains a large area of territory. When floods or freshets occur the channel of this river overflows, and the stream then becomes very much widened, extending and flowing at such times from the foot-hills upon one side to the foot-hills upon the other side of the river's valley. In the valley of this river, in Richardson county, is situate the farm of Oliver Emmert. In 1883

the Chicago, Burlington & Quincy Railroad Company, hereinafter called the railroad company, constructed a road at right angles across the valley of this river near said Emmert's farm. For the purpose of laying its ties and track thereon, the railroad company across this valley constructed an embankment of earth, and left no openings or culverts in the same through which the waters of this river, when out of its banks, might flow as they did prior to the construction of such embankment. In 1889 and 1892 freshets occurred, the channel of the river overflowed, and the waters spread out over the valley. The embankment arrested their progress, turned them back, and held them upon the lands of Emmert,—situate just up the river from the embankment,—and destroyed, as he alleges, his grass crops and pasture, a crop of standing corn, and permanently injured or depreciated in value his farm. To recover compensation for these injuries, he sued the railroad company in the district court of Richardson county, alleging that the railroad company, in omitting to construct culverts or openings in its embankment for the passage of the waters of the river in times of flood, had been guilty of negligence that had caused the injury to his property. The trial resulted in Emmert's obtaining a verdict and judgment, to review which the railroad company has instituted in this court error proceedings.

1. As already stated the embankment was constructed in 1883. The injuries sued for occurred in 1889 and 1892, and one proposition relied upon here for a reversal of the judgment of the district court is that Emmert's cause of action arose at the time of the negligent construction of the embankment, or more than four years before the bringing of this action, and hence was barred when brought. This precise question was presented to this court in *Fremont, E. & M. V. R. Co. v. Harlin*, 50 Neb. 698, and we there held that the cause of action arose when the injury sued for occurred, and not at the time of the completion of the improvement negligently constructed

which caused the injury.    The authorities bearing upon the question under consideration are somewhat extensively examined in that case and we see no reason for not adhering to the conclusion then reached.

2. Another contention of the railroad company is that its embankment was properly constructed for railroad purposes; that the overflow or flood water of this river was surface water; and, if Emmert was damaged by the construction of the embankment at the place and in the manner that it did, the railroad company is not liable therefor, as it owed no duty to an adjoining proprietor as to the manner in which it should exercise its right to build its railroad and protect its property from such surface water.    But is the assumption of the railroad company that the flood or overflow water of this river was surface water, correct?    It must be conceded that many cases hold the flood or overflow of a natural stream is surface water.    See the rule stated and the authorities collated in 24 Am. & Eng. Ency. of Law [1st ed.], p. 903.    But we are by no means satisfied with the doctrine of these cases nor with the reasoning on which they are based.    Though they are in the majority, we do not think they are right.    We shall not attempt to lay down a rule as a guide in all cases for determining whether waters are surface waters.    Whether water is, or is not, surface water within the meaning of that term, must be determined from the peculiar facts in the case in which the question is presented.    But to say that the flood or overflow water of this Nemaha river, when out of its banks, and flowing from foot-hill to foot-hill, is not a part of the river itself, not part of the natural water course, but mere surface water, is to contradict ordinary common sense.    In one sense of the word, all the water of this river was at one time, perhaps, surface water.    When this water was falling upon the watershed of this stream, when it was millions of aqueous threads, flowing toward the stream covering the surface of the watershed, then it was surface water; but when

it reached the stream, became a part thereof, whether the stream was then flowing between its ordinary banks and in its ordinary channel, or whether it had extended beyond its channel, and was flowing from one foot-hill to the other, then this water ceased to be surface water and became a constituent part of the natural stream.

In *Crawford v. Rambo*, 44 O. St. 282, the supreme court of Ohio, in discussing the question under consideration, said: "It is difficult to see upon what principle the flood waters of a river can be likened to surface water. When it is said that a river is out of its banks, no more is implied than that its volume then exceeds what it ordinarily is. Whether high or low, the entire volume at any one time constitutes the water of the river at such time; and the land over which its current flows must be regarded as its channel, so that, when swollen by rains and melting snows, it extends and flows over the bottoms along its course, that is its flood-channel, as when by drought it is reduced to its minimum, it is then in its low-water channel. Surface water is that which is diffused over the surface of the ground, derived from falling rains or melting snows and continues to be such until it reaches some well-defined channel in which it is accustomed to, and does, flow with other waters, whether derived from the surface or springs; and it then becomes a running water stream and ceases to be surface water." To the same effect see *Byrne v. Minneapolis & St. L. R. Co.*, 38 Minn. 214; *O'Connell v. East Tennessee, V. & G. R. Co.*, 4 Am. R. & C. Rep. [Ga.] 449; *Sullens v. Chicago, R. I. & P. R. Co.*, 38 N. W. Rep. [Ia.] 545; *Moore v. Chicago, B. & Q. R. Co.*, 39 N. W. Rep. [Ia.] 390. These cases express our views and we cheerfully yield to them as authority on the subject under consideration.

But it is said that in *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, this court committed itself to the doctrine that the flood or overflow water of a natural stream was surface water. But counsel are mistaken. RYAN, C., speaking for the court in that case used this language:

"The evidence in the case under consideration fails to show that the water complained of was a part of Yankee creek before crossing the right of way now occupied by the defendant's embankment, though there is evidence from which it might be inferred. It seems, too, that it was ultimately discharged into the Nemaha river independently of Yankee creek. * * * It does not satisfactorily appear from the evidence that it was a part of the flood water of Yankee creek; neither is it shown that but for the railroad embankment it would have sought an outlet by way of that creek. This water, therefore, under any of the definitions above given, was but surface water * * *." Further, the commissioner says: "Our conclusions are that the district court correctly concluded from all the evidence adduced on the trial of this case that the water, the flow of which was interfered with by the railroad embankment, was surface water. It flowed in no defined water course and overflowed only when there were extraordinary freshets. It was not shown that in its undiverted course it originated from or returned to the channel of Yankee creek. Its existence was directly traceable to falling rains. Its course was along the valley but not as a part of the stream." We reach the conclusion, therefore, that the flood or overflow waters of the Nemaha river that were arrested and turned back in 1889 and 1892 by the embankment of the railroad company were not surface waters but were a part of the water of the Nemaha river,—a natural stream.

3. Another error assigned and argued by the railroad company here relates to the rule as to the measure of damages enforced by the trial court. Emmert's proper measure of damages under the issues made by the pleadings as to his crop of corn, was the fair value of the corn destroyed at the time of its destruction. The measure of damages for the grass pasture destroyed was the fair value of the timothy and clover constituting the pasture at the time of its destruction; and the measure of his

damages as to the injury caused to his real estate by
the embankment turning back and holding thereon the
flood waters, was the difference in the fair market value
of his real estate immediately before and immediately
after such event. (See *Fremont, E. & M. V. R. Co. v. Crum,*
30 Neb. 76; *Kansas City & O. R. Co. v. Rogers,* 48 Neb. 653;
*Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb., 698.)

On the trial Emmert was asked, and over the objec-
tions of the railway company answered, questions as
follows: "Q. What was the use of that meadow,—the
pasture land,—that year worth to you? State in round
numbers what loss it was to you,—the loss of your pas-
ture that year." To which he answered that he was
compelled to procure other pasture that year for his
stock and that he considered the loss was at least $150.
"Q. In its matured state, as you had it before the fall of
1889, what was the actual value of that meadow to you?"
To which he answered that it was worth $10 an acre.
These questions all called for incompetent and irrelevant
evidence under the issues. In his petition Emmert made
no claim for any special damages, but claimed damages
generally for the destruction of his corn and timothy
and clover growing upon the lands on which the embank-
ment of the railroad company held the flood-waters of
the river. The question was not what the use of the
meadow or the value of the meadow was to Emmert,
but the question was: What was the actual fair value of
this crop of timothy and clover at the time it was de-
stroyed, and what was the fair value of the crop of corn
destroyed? As to the depreciation in value of the land
caused by the embankment's arresting the flood waters
of the river the petition alleged "that said plaintiff has
been further damaged in the sum of $2,000 by reason of
the depreciation of the market value of said farm in
this: that in consequence of such overflow in the year
1889, and the flooding of his farm by said railroad grade
holding and damming the water back upon it, and by
subsequent overflows of like character, his said farm has

come to be known in the neighborhood as one liable to overflow, and consequently has lessened the market value of the land two-fifths of its value before it was flooded by said negligently constructed railroad, in August, 1883." This allegation of the petition did not state a cause of action. Under this allegation Emmert was not entitled to introduce any evidence to show that his real estate had been damaged or depreciated in value by the construction of this embankment; yet Emmert was, on the trial, over the objection of the railway company, permitted to testify that, after the recession of the high waters, the land was left wet and in a bad condition to cultivate; that the use of it in the year following the flood was of less value by one-half than it was previous to the flood; that the crops grown on the premises in the year succeeding the flood were only half the value they would have been had the flood not been there; that this value amounted to five dollars an acre. The admission of all this evidence was error, as it violated the rule of damages applicable to the case. We cannot say that the admission of this evidence was not prejudicial to the railroad company, as under it the jury may have, and probably did, charge the railroad company with the sum of money which Emmert testified he was compelled to pay for having his cattle pastured during the autumn succeeding the flooding of his land in August, 1892. The jury may have and probably did estimate the value of the crop grown on the premises in the year succeeding the flood of 1892, and concluded that crop was not worth as much by $5 an acre as it would have been had the lands of Emmert not been overflowed in that year. As already stated, Emmert was not suing for any of these things. He alleged generally in his petition his ownership of these lands; that on part of the land was a crop of growing corn, and on other parts of the land there was a pasture composed of timothy and clover, and that these grasses and this corn crop in 1889 were destroyed by the holding of the flood waters of the river on his

lands by the railroad company's embankment. What he had been compelled to pay or had paid for pasturing his cattle by reason of the presence of the water on his lands in 1889 was not an issue in the case. Whether the crop succeeding the flood of 1889 and 1892 was as good as it would have been had such an overflow not occurred, was not an issue in the case. We are constrained to say that we think the admission of this evidence was prejudicially erroneous. The judgment is reversed and the cause remanded to the district court with instructions to grant the railroad company a new trial.

REVERSED AND REMANDED.