FINLEY ET AL. v. HERSHEY.

41  389
111  431

1. **Riparian Rights:** EFFECT OF DAM.  The rights of riparian owners attach as well to an artificial pond made by an obstruction of a water course as to a stream of running water.  They exist without reference to the peculiar character of the body of water.

2. **Nuisance:** ABATEMENT OF.  To abate a nuisance occasioned by a pond of water, one injured thereby has not the right to fill up the bed of the water, but may remove the cause rendering the water impure, or restrain the parties whose acts produce that result.

3. **Damages:** MEASURE OF: RIPARIAN RIGHTS.  The measure of damages sustained by a riparian owner by the unlawful filling of a pond is the depreciation thereby occasioned in the value of his property, and both the effect upon its present use and upon its permanent value should be considered.

*Appeal from Muscatine Circuit Court.*

FRIDAY, OCTOBER 22.

ACTION at law to recover damages sustained by plaintiffs on account of defendant wrongfully filling up a slough or arm of the Mississippi river upon which a slaughter and pork house, owned by plaintiffs, is situated.  There was a verdict and judgment for plaintiffs; defendant appeals.  The facts of the case appear in the opinion.

*Cloud & Broomhall* and *Henry Jayne*, for appellant.

The following cases correctly state the law respecting the rights of riparian owners:  Angell on Water Courses, § 41; *Railroad v. Stevens*, 10 Am. Law Rep., N. S., 177–8–9; *Rice v. Rudiman*, 10 Am. Law Rep., O. S., 618–9; *Ashley v. Walcott*, 11 Cush., 194; *Grant v. Davenport*, 18 Iowa, 192; *R. R. Co. v. Schermer*, 7 Wall., 283.  As to what constitutes a navigable river, see *McManus v. Carmichael*, 3 Iowa, 1.  A party has the right to enter upon the premises of another for the purpose of abating a nuisance, doing as little damage as possible therein.  (2 Hill. on Torts, p. 94–6, note a, 141 § 24; Washburn's Easements and Servitudes, 676, § 33; 683, § 24; *State v. Moffatt*, 1 G. Greene, 248; Angell on Water Courses,

§ 389–392.) In assessing damages for the obstruction of a water course, the injury should not embrace the depreciation in the value of the property, but should be confined to the *use* of it, the depreciation in its rental. (Angell on Water Courses, 427–8; *Close v. Samm,* 27 Iowa, 503; 2 Greenl. on Ev. § 474; *Pollett v. Long,* 58 Barb.; *Selma R. Co. v. Knapp,* 42 Ala., 480; *Russell v. Burlington,* 30 Iowa, 266.) Defendant is not confined to proof of actual damage; he may recover upon showing that the matter complained of was a nuisance. (*Russell v. Burlington, supra; Ewell v. Greenwood,* 26 Iowa, 380.)

*Richman & Carskadden,* for appellee.

Exceptions should be definite and specific; a general exception is unavailing if there is any paragraph included which states the law correctly. (*Mershaw v. Nat. Ins. Co.,* 34 Iowa, 88; *Brown v. Scott County,* 36 Id., 140.) An assignment of error must point out the very error objected to. (Code, 3207; *Peck v. Hendershott,* 14 Iowa, 40.) The purchaser at sheriffs' sale gets the whole interest and estate of the execution debtor, including covenants of title, if any. (Rorer's Jud. Sales, p. 266–7, and cases cited.) The title of riparian owners extends to the center of the water course. (*Varrich v. Smith,* 5 Paige, Ch., 143; *Child v. Starr,* 4 Hill., 372; 3 Kent's Com., 427–8; *Knight v. Wilder,* 2 Cush., 199; *McManus v. Carmichael,* 3 Iowa, 4.) One who is a riparian owner always remains so, subject to the rules of alluvion and dereliction. (*Kraat v. Crawford,* 18 Iowa, 549.) Where an artificial pond forms a boundary to land, the owner holds to the center of the pond; and where a pond is created by the construction of a mill dam, the same rule applies to the pond as was applicable to the stream. (*Manson v. Blake,* 62 Me., 14 Am. Law Rep., N. S., 194.) A party may personally abate a nuisance upon the land of another, only in those cases which will not admit of delay, and where prompt action is necessary. (*Moffatt v. Brewer,* 1 G. Greene, 350; 1 Hill. on Torts, 660, § 18a; *Wetmore v. Tracy,* 14 Wend., 255.) The injured party must exercise this right summarily. (*Moffatt v. Brewer, supra*) If the alleged nuisance was *created* by another, the party who simply *continues*

it must be notified before the injured party can abate the nuisance or bring an action. (Washburn's E. and S., 678; *Jones v. Williams*, 11 Mees. & Wels., 176; *Branch v. Doane*, 17 Conn., 402; *Curtis v. Thompson*, 19 N. H., 471.) Where the party uses this summary remedy he must not destroy property, unless such destruction is absolutely necessary. (*Morrison v. Marquardt*, 24 Iowa, 68; *Moffatt v. Brewer*, 1 G. Greene, 350.) Defendant has not a right of action unless he suffers an injury distinct from the public, as a consequence of the nuisance. (*Ewell v. Greenwood*, 26 Iowa, 380, and cases cited.) Defendant's claim for the alleged nuisance should be limited to actual damages. (*Williamson v. W. Stage Co.*, 24 Iowa, 171; *Brown v. Allen*, 35 Id., 306.)

BECK, J.—Plaintiffs are the owners of a lot or tract of land situate upon and bounded by Muscatine slough, an arm of the Mississippi river. Upon their property, and near the slough, is a slaughter and pork house, which was built and used by the prior owners of the land. It has also been used by plaintiffs. The defendant owns a lot situated upon the same slough which lies between the plaintiffs' property and the Mississippi river, and upon it is erected and in operation a steam saw mill. These facts appear in the petition, which further shows that defendant, some years before the commencement of this action, began to fill up the slough by depositing therein large quantities of refuse from his mill and continued so to do until a large extent of the slough in front of defendant's premises has been filled up whereby the flow of the water from the river has been, to a great extent, cut off and impeded. Another count of the petition avers that defendant wrongfully entered and trespassed upon plaintiffs' premises by filling up the slough in front of their lot, and another charges that defendant unlawfully constructed a boom at the source of the slough, whereby the flow of water into the slough is diverted and diminished, and plaintiffs are deprived of the use and benefit thereof.

The answer of the defendant denies the allegations of the petition, and further alleges that in 1844, by authority of the

territorial legislature, a dam was constructed across the slough, and in 1856 a railroad company built a railroad across the slough between the lot of defendant and the river, leaving but a small passage for the water. Because of these structures there was no current of water through the slough and at the points where the defendant and plaintiffs' lots are situated; it became a stagnant pool without outlet. These obstructions to the flow of the water were erected before plaintiffs became the owners of the property, and they have caused the filling up of the slough. It is also alleged and pleaded, by way of set-off, that plaintiffs have deposited offal from their slaughter house in the slough, thus creating a nuisance, which has greatly injured defendant and he claims to recover damages therefor.

I. An instruction in the following language was given to the jury: "3. The said property and premises of both plaintiffs and defendant abut upon and extend to the center line of said stream or water-course known as Muscatine slough; and since the purchase of plaintiffs' premises, August 18, 1870, they have been entitled to the use and enjoyment of said stream or body of water in the condition it then was, as to quantity and natural flow of current, subject only to changes from natural causes and reasonable use of the same by other riparian owners; and neither party, plaintiffs nor defendant, had a right to change the natural course, flow or current of said stream or water course, or diminish the quantity thereof to the injury of the other party, unless the injury results from reasonable use of the water, as above stated; but both parties had a right to use said water in a reasonable manner and to a reasonable extent for the purpose of their business."

This instruction is made the ground of the first exception urged by defendant. Counsel insist that it is not applicable to the facts before the jury because the slough, on account the dam erected in 1844, and the construction of the railroad at its source, destroyed its character as a water course, and the doctrines controling the rights of riparian owners are, therefore, not the law of this case.

The fact stated in the first sentence of the instruction,

namely, that the property of the respective parties abutted upon the slough is established by the record evidence beyond dispute. The government sub-divisions of the land of which the property involved in the suit constitutes a part, are fractional and abut upon the slough, and the lines adjacent thereto meander with it. The slough between the government lines upon each side of it was regarded by the government in the surveys and sales of the land as a water-course. The evidence tends to establish that the dam built in 1844 arrested the flow of the water through the slough, but the railroad constructed across its source did not prevent the water flowing into and out of the slough from the river. The depth of the water was thus affected by the variations of that stream. When it was rising a current flowed into the slough and when its waters receded the direction of the current was changed.

The defendant insists, as we have before said, that plaintiffs held no riparian rights on account of the fact that the natural 1. RIPARIAN character of the slough has been changed so as to rights: effect of dam. become, at the place whereon the property of the parties abuts, a pond or body of water without a current. We have never heard that riparian rights depended upon the character of the current in the water upon which these rights extend. They exist if the water be an artificial pond made by a dam in a water course as well as when it is an unobstructed running stream, and the fact that such a stream has been, by proper authority, changed by artificial means to still water, or its flow impeded, does not affect such rights. If we assume that the slough became a pond with the natural current obstructed, it does not therefore follow that the rights of owners of the adjacent lands were destroyed. (Angell on Watercourses, § 41.) But, in fact the slough is not without a current or more properly a flow of water. As we have explained, the water flows into and out of it, depending upon the stage of water of the river.

We reach the conclusion that the obstruction to the current of the slough did not take away the the rights of the plaintiff

to the use and improvement of its water.   The instruction announced a rule of law applicable to the facts of this case.

II.   The defendant claims that the use of the slough by plaintiffs, for the deposit of offal from their slaughter house, rendered the water offensive and created a nuis-ance to defendant, and that he had a right, in order to abate the nuisance, to enter upon plaintiff's premises and fill up the slough over which plaintiff's rights extended.   The court directed the jury that defendant possessed no such right and· could not fill up the slough in the manner and for the purpose mentioned.   This instruction, it·is insisted by defend-ant's counsel, is erroneous.   We think it is correct.   The existence of the slough and the water therein of themselves were no nuisance.   It was the use to which plaintiff appropri-ated them which created the nuisance.   Defendant could not destroy the water course to abate the nuisance caused by its improper use.   The slaughter house was the source of the nuisance, not the slough.   To abate the nuisance it would be more reasonable to destroy or remove the slaughter house than to fill up the slough.   It can hardly be claimed that a stream or pond of water made foul by impure substances being cast into it may, to abate a nuisance caused thereby, be filled up. The source from which the impurities originate may be removed or the parties causing the nuisance may be restrained from future acts of the kind.   *State v. Koster*, 35 Iowa, 221.

*2. NUISANCE: abatement of.*

III.   As a rule for assessing plaintiff's damages the court instructed the jury to determine the value of the property affected by the filling of the slough prior thereto, and then to find its value as depreciated by such filling done by defendant.   The difference in such values is the damages which plaintiffs are entitled to recover. It is insisted that the instruction is incorrect and that the true measure of plaintiff's damages is the difference between the value of the use of the property before and after the filling done by defendant.   The injury sustained by plaintiffs affected the property itself and incidentally the value of its use was depreciated.   It is evident that the rule contended for by defendant's counsel would, if applied to the case, fail to make

*3. DAMAGES: measure of: riparian owners.*

full compensation to plaintiffs. The property depreciated in value because the value of its use was affected and because the property itself was injured by the acts complained of. In order to compensate plaintiffs for the injury to their property they should recover to the extent its value was depreciated. If plaintiffs could only recover for the depreciated value of the use of the property whenever the property was used, as defendant claims, there would be a continually recurring cause of action in favor of plaintiffs, and the rights of the parties would not be settled in the present suit, a thing which the law will avoid.

But defendant argues that the filling deposited by him in the slough may be removed by plaintiffs and the advantages of the water will thus be returned to them. But when permanent injuries of this kind are done to real property the owner will not be required to restore it to its former condition. The wrong-doer cannot impose a burden of this kind upon the injured party and thus escape liability for the full amount of the injury done. Besides it may be that if the property can be restored to its original condition, the expense thereof entered into the estimate of its depreciated value.

The rule of the instruction commends itself to us as awarding just compensation to plaintiffs, and its application results in the final settlement of the controversy between the parties.

The foregoing discussion disposes of all questions presented by counsel. We find no ground upon which the judgment of the Circuit Court can be disturbed; it is therefore

AFFIRMED.