JOHN IRVINE, Appellee, v. THE CITY OF OELWEIN, Appellant.

**NUISANCE:** Damages—When Original—When Continuing—Right
1    to Elect. When a nuisance is permanent in its construction, and
     fixed, determinable and permanent damages at once result from
     the very nature of such construction, the damages are original,
     that is, all damages, present and prospective, accrue at once.

   PRINCIPLE APPLIED: A city, without authority of law,
erected a permanent concrete and iron dam across a creek in order
to form a lake within its park. Plaintiff was an active promoter and instigator of the scheme. The water rose to its new
level within two or three weeks, overflowing, as had been intended
by all parties, certain lands. About a year thereafter, plaintiff
bought by ordinary warranty deed 80 acres of land, known by him
to be in part overflowed on account of said dam. He brought
action for the permanent damage to the land, later amended to
recover the depreciation in rentals, and asked for an abatement.
At trial, he elected to recover the depreciation in rental value.
His evidence showed both depreciation in rental value and injury
by submergence of gravel beds, live springs, grass lands and timber, thus proceeding on the theory that, though the nuisance and
resulting damages may have been permanent, yet he had the
right to elect to treat the nuisance as a continuing one and sue,
from time to time, for the loss of rental value instead of damages to the land. *Held:*
   1. The nuisance and resulting damages being both permanent,
the damages were *original.*

2. The damages being *original*, they belonged, not to plaintiff, but to the former owner from whom plaintiff bought, the warranty deed not carrying the same to plaintiff.

3. Plaintiff could not treat the nuisance as a continuing one.

4. Plaintiff was estopped to abate the nuisance.

**VENDOR AND PURCHASER:** Existing Permanent Nuisance—Damages—Action by Grantee. When damages occasioned to land by a nuisance are original, an ordinary warranty deed will not carry to the grantee in the deed the right to such damages.

**NUISANCE:** Who May Abate—Estoppel. Where plaintiff actively promoted and advised the erection by a city of a permanent dam across a creek in order to form a lake in the city park, intending and knowing that certain lands would be permanently submerged, ,and damages, original in their nature, were thereby caused to a landowner by the overflow, he (plaintiff) will not be permitted, after buying said land, to abate said nuisance or to treat the same as a continuing nuisance, except as to damages independent of those proximately following the construction of said dam.

*Appeal from Fayette District Court.*—HON. A. N. HOBSON, Judge.

FRIDAY, JANUARY 22, 1915.

REHEARING DENIED TUESDAY, JUNE 22, 1915.

ACTION at law to recover damages for an alleged nuisance, due to the construction of a dam which caused water to overflow lands belonging to plaintiff, and for an order for an abatement of the nuisance. The case was tried to a jury upon issues joined by defendant's answer, resulting in a verdict for plaintiff in the sum of $200.00, and an order of abatement as prayed. Defendant appeals.—*Reversed* and *Remanded.*

*W. B. Ingersoll, E. H. Estey, Jay Cook,* and *Rollin J. Cook,* for appellant.

*A. E. Irvine* and *Ainsworth & Hughes,* for appellee.

DEEMER, C. J.—During the year 1907, the defendant city, at the instance or upon the request of many citizens of the town, for the purpose of creating an artificial lake in a park in the defendant city, undertook the erection of a reinforced concrete dam across a stream known as Otter Creek, which flowed through the city, or a part thereof. This dam was built near the south line of section 33 of the township in which the city is located, and upon ground belonging to the city. No condemnation proceedings were instituted, but the city obtained many voluntary conveyances from parties owning lands which would be affected by the dam, among whom was plaintiff. Plaintiff, being the then owner of the south thirty acres of the S. E. ¼ of the N. W. ¼ of Section 33, made a deed to the defendant, which granted to the city, among other things:

"The right to maintain the dam as above set forth and overflow the lands above described belonging to us in such way and manner as shall be necessary in judgment of said City of Oelwein to create and establish and maintain said lake as above set forth forever. And it is further agreed that the said City of Oelwein shall have the right to the use of all lands overflowed for the purpose of boating, fishing, etc., and for all other purposes incident to the creation and maintenance of said lake for park purposes and the establishment and maintenance of said park upon the premises hereinbefore described purchased from the said G. A. Oelwein, the said party above named as grantors hereby and herein expressly waive any claim for damage from the said City of Oelwein resulting from the use and occupancy of said land in the way and manner above set forth. . . . It is expressly understood and agreed that the grant and right herein conveyed shall continue and endure so long as the said premises or any part thereof purchased from the said G. A. Oelwein shall be used for park purposes; and the said Isabella Irvine, Katherine Miles hereby and herein relinquish all their right of dower in and to the above described premises."

Contracts were made for the construction of the dam, and the city proposed to issue its warrants for $2,500 in payment thereof. The contractors were not satisfied with these warrants alone, and to protect them against loss, forty-five citizens, among whom was plaintiff, executed to said contractors a written guaranty of the payment of said warrants. The conveyance was made on July 30, 1906, and the guaranty on April 19, 1907. The dam was built by the contractors and completed on or about November 2, 1907, and water arose to the height of the dam and backed upon the lands within two or three weeks after its completion. The dam was built of concrete, steel and iron, and in as substantial and permanent a manner as possible; but when originally constructed, it was supplied with a wooden gate, which was afterward supplanted by an iron one, weighing about 1,000 lbs., and operated by cogs and a pinion wheel. This gate goes to the bottom of the dam, and is about 4 feet by 6 feet in size, and 3 inches thick. By raising it, all the water confined by the dam may be let out. This gate is not used to relieve flood water or ice, and all such flows over the top of the dam. Very little water passes through the dam itself, and it is as permanent as it is possible to make such a structure, the witnesses saying that it could only be destroyed by dynamite.

At the time of the construction of the dam and down until October 27, 1908, one Alice Guthrie was the owner of the W. ½ of the S. W. ¼ of section 28, in the same township as the one in which the dam was built, known in the record as the "Holroyd Eighty," which was more or less affected by the back water of the dam, which fact was well known to plaintiff. On the last named date, she, in consideration of the sum of $3,000, conveyed the same by warranty deed to plaintiff herein, covenanting that said land was free and clear of all incumbrance, and fully warranting the title. The price per acre was $37.50. The deed was delivered and plaintiff thereunder became entitled to the possession and use of the land. Without any notice to the city to remove or abate

the dam, plaintiff, on January 6, 1911, commenced this action
to recover damages and to abate the nuisance caused by the
dam. This was followed by various other pleadings, to some
of which we shall refer during the course of the opinion.

Doubts having arisen regarding the legality of the pro-
ceedings of the city in the premises, the legislature, by an act
passed April 12, 1909, undertook to legalize the same as
fully as if they had in all respects been in strict conformity
to law. In the original petition filed in the case, plaintiff
alleged that the dam of which he complains was and is a per-
manent concrete structure, and that it caused the water to
back up and overflow not only the 80-acre Holroyd tract, but
also the N. ½ of the S. E. ¼ of the S. W. ¼ of the same
section, which plaintiff had owned for many years. The exact
allegations as to damages are as follows:

"That the effect of the erection of said dam across Otter
Creek, at the place above mentioned, was to cause the water
to raise in said creek, and flow back onto the plaintiff's land,
thereby submerging a large quantity of land in ordinary stages
of water; and in flood seasons, to cover a large tract on both
sides of said creek of the plaintiff's land.

"That previous to the erection of said dam, the plaintiff
was enabled to cross said creek from one side to the other
on his land at most any point along said creek by easy fording.
That since the erection of said dam, he is unable to cross
from one side to the other except by boat.

"That the plaintiff has been damaged on account of the
wrongful act of the defendant, in overflowing his land, in the
sum of twenty-five hundred dollars."

On September 17, 1912, plaintiff filed a supplemental
petition, in which he charged:

"That the flooding and overflowing of plaintiff's land
alleged in the original petition herein has been continued by
the defendant through the years 1911 and 1912.

"That the water standing upon the plaintiff's land has become stagnant and has accumulated scum and filth and has destroyed the timber and grasses growing on said land.

"That the defendant threatens to continue the overflowing of plaintiff's land and unless enjoined from so doing, the damages occasioned thereby will accrue from year to year and the value of plaintiff's land will be permanently destroyed.

"Whereas, plaintiff asks that he have judgment for the sum of Three Hundred Dollars ($300), in addition to the amount originally asked in the petition herein on account of the damages caused by the flooding of the lands since the filing of the original petition, and that the defendant be enjoined and restrained from continuing or maintaining the dam and from overflowing and flooding plaintiff's land, and for interest and costs as prayed in the original petition herein."

After trial, and after submission of the case to the court on various motions, plaintiff was permitted to file another pleading, called an amendment to the supplemental petition, in which he alleged:

". . . and plaintiff has been damaged by reason of such wrongful acts of the defendant in flooding and overflowing his said land during the said years, 1911 and 1912, in the sum of Three Hundred and no-100 ($300.00) Dollars."

Among other things, defendant pleaded plaintiff's guaranty of payment of the warrants as a complete defense to the action; that plaintiff was not the owner of the land until long after the dam was constructed and the water backed up, and that he is not an assignee of any claim for damages on account thereof; and also the conveyance by plaintiff to defendant of his lands for the purpose of waiving damages to his lands from the overflow of the water. It admitted the construction of the dam and that it was a permanent structure, and pleaded the legalizing act already referred to; and

further pleaded that plaintiff orally requested the defendant to erect the dam before any steps in that direction had been taken. Some other matters were pleaded in defense, which need not be mentioned.

Plaintiff demurred to some of these defenses, and the demurrer was sustained in part and overruled in part. No attention need be paid to these rulings, as they are not now challenged, and so are not involved in what we shall say regarding the merits of the case. Just before the taking of the testimony began, the following record was made:

"Comes now the defendant and moves the court to require the plaintiff to elect whether he will proceed in the trial of this case upon his claim for permanent damages for the construction of said dam as set forth in his original petition, filed herein, or whether he would proceed upon his claim for injunction and damages up to the time of this trial as set forth in his supplemental petition herein.

"And the plaintiff thereupon made the following election. The plaintiff elects to consider the damages as continuing damages, and to stand upon the entire pleading as a, pleading of continuing damages.

"The defendant thereupon renewed its motion as follows:

"'Comes now the defendant and moves the court to require the plaintiff to elect whether he will proceed in the trial of this case upon his claim for permanent damages for the construction of said dam as set forth in his original petition filed herein, or whether he will proceed upon his claim for injunction and damages up to the time of this trial as set forth in his supplemental petition herein. The court thereupon made the following statement, the attorney for the plaintiff having elected to proceed for such damages as he sustained to the present time, and having stated that he does not seek to recover all the damages he may sustain by flooding of the property which he may at any time hereafter sustain. Plaintiff excepts. Defendant excepts.'"

Plaintiff then proceeded with the taking of his testimony and introduced evidence to show that certain gravel pits or beds on the land were covered with water so that he could not get at them; that pasture land was damaged by ice and debris lodging on the land in the spring; that the water was covered with scum that came from the city, and the water became unpalatable; and that certain live springs were covered by the back water so that they could not be used by man or beast; that the grass and pasture lands were destroyed. He also claimed that certain timber was destroyed; but as a rule, he confined his proof of damages to the difference in the rental value of his land during each of the seasons of 1909, 1910, 1911 and 1912. Aside from this, the case was treated as for a permanent nuisance; and injury to the land, the grass and the trees was shown. Motions for directed verdict were filed both at the close of plaintiff's testimony and after both parties had rested, but these were overruled and exceptions taken.

The verdict was for plaintiff in the sum of $200.00, and defendant moved in arrest of judgment, for judgment notwithstanding the verdict, and for a new trial. Each and all of these motions were overruled and judgment was entered upon the verdict and an order of abatement was also entered, restraining defendant from continuing or maintaining the dam.

Appellant raises many questions in the brief filed for it, and the fundamental propositions are not easy of solution. The trial court instructed in part as follows:

"This action was brought originally for permanent damages, and in reaching a proper conclusion in the case, it may be necessary for you to determine from the evidence whether the injuries complained of are permanent or continuing injuries. Whenever the acts complained of are of such a character that their continuance is necessarily an injury, and where they are of a permanent character, that will continue without change from any cause but human labor, there the

damage is an original damage; but where the injury from the alleged wrongful acts is temporary in its nature, or is of a continuing or recurring character, the damages are ordinarily regarded as continuing.

"If you find from the evidence that the dam in question is a permanent dam, then under the undisputed facts in the case plaintiff cannot recover for any damages which may have been sustained to the premises previous to the time he became the owner thereof.

"If you find from a preponderance of the evidence before you that the dam erected by the defendant city overflowed plaintiff's land, that the city maintained said dam after plaintiff became the owner of the premises, and that said city continued to overflow plaintiff's land, then your verdict should be for plaintiff; and if you do not so find, then your verdict should be for defendant.

"If your verdict is for plaintiff, then you will allow him the difference between the rental value of the premises, if the said land was in the condition it was before it was overflowed by defendant, and its rental value in the condition it was immediately after such overflowing, all as shown by the evidence, and covering the years 1909, 1910, 1911 and 1912.

"You are instructed that you will allow no other items or amounts except rent in computing damages in case your verdict is for plaintiff, and you will not allow plaintiff to recover any amount whatever on account of the polluting of the river from above by the gas plant, railroad shops or by the defendant city."

Whilst many questions are argued, the chief contention is over the plaintiff's right to recover any damages at all because of the permanence of the structure, and the fact that plaintiff did not become the owner of the land until after the damage was done. The trial court instructed upon the question of the permanent character of the dam, and the jury found, in answer to a special interrogatory, that the dam did

1. NUISANCE: damages: when original: when continuing: right to elect.

not constitute a permanent injury to the plaintiff's land; yet as a matter of fact there was no real issue in the pleadings over that fact, and the testimony, aside from a little with reference to periodic overflow and the special damage incident thereto, was directed to the damage done the land, the grass, the gravel and the timber on the land; and plaintiff evidently proceeded upon the theory that, while the nuisance was permanent, and the damages were to the land itself and not to the crops thereon, yet that he (plaintiff) had the right to elect to treat the nuisance as a continuing one and to sue for loss of the rental value instead of for damages done to the land itself. There are some cases which indicate that this may be done, where the party injured has at all times owned the land, as illustrated in *Risher v. Coal Co.*, 147 Iowa 459; *Hollenbeck v. Marion*, 116 Iowa 69; *Harvey v. R. R. Co.*, 129 Iowa 465. But the general rule is that, where the nuisance is permanent, and the damages are to the land itself, and all parties intend that the nuisance shall be permanent, the cause of action arises when the land is first flooded, and the recovery must be for the full amount of damages done the property, measured by the difference between the value of the land before and immediately after the dam was constructed and the flooding done. In such cases, the statute of limitations begins to run on the date of the first flooding and successive actions cannot be brought. *Powers v. City of Council Bluffs*, 45 Iowa 652, 658; *Peden v. R. R. Co.*, 73 Iowa 328; *Stodghill v. R. R.*, 53 Iowa 341. In such cases, the dam-

2. VENDOR AND PURCHASER: existing permanent nuisance: damages: action by grantee.

ages are done to the then owner of the land, and his cause of action is not transferred to a grantee by warranty deed. Such is the express holding in *Peden v. R. R. Co., supra,* a case which has never been challenged or repudiated since its announcement. We do not know just why the trial court submitted the question of the permanency of the dam to the jury. The issue was not tendered, and if it were, according to the court's instruction, it had no bearing

upon the issues joined; for under no theory would plaintiff be entitled to any damages done the land or for anything depreciating its rental value, before he owned it.  Unless the instructions as a whole are to be treated as warranting the jury in finding damages for plaintiff because of the overflow of the lands, and not for a periodic and contingent flooding, then they are inconsistent, and for that reason, erroneous.

Moreover, there was no proper testimony as to damages due to periodic, non-continuous overflows; the evidence on this point was directed to the difference in the yearly rental value due to the permanent, continuous overflow of the land. Should it be assumed, then, that instruction number seven had reference to damages done the premises as a whole, and the other instructions to difference in yearly rental values due to the overflow of the lands, then they were inconsistent and likely to mislead the jury.  Of course, there may be damages non-continuous in character, even in the event of a permanent nuisance; but if the overflow is persistent and continuous, and will certainly follow unless the nuisance be abated by the hand of man, then they are to be recovered in a single action; and all, past, present and prospective, are to be awarded. The distinction is very important in actions such as this, where the damages are done to land owned by a given person, who subsequently transfers the same to another, without conveying his right of action against the wrongdoer to his grantee. Alice Guthrie was the owner of this land for some months after the water had risen to its full height, by reason of the construction of the dam; and at the time of her conveyance to plaintiff, she had a cause of action against the defendant for the injury done to her land.  This she did not transfer to the plaintiff; for it was not assigned by her deed.  *Peden v. R. R.*, 73 Iowa 328.  And she either consented to the overflow of her land, in which event plaintiff could not recover damages, or she still has a cause of action against the defendant which she has never assigned or transferred to the plaintiff.  If she has such an action, then plaintiff should not

recover; for her right, by reason of the permanency of the
structure, was to recover all damages, past, present and fu-
ture.    This is pointed out in the cases already cited, and
especially the *Peden* and *Harvey* cases, *supra*.   See also *Bizer
v. Ottumwa Co.*, 70 Iowa 145; *Town of Troy v. R. R. Co.*,
3 Fost. (N. H.) 83.

Defendant should not be subjected to a double liability
by reason of a transfer of the land.  It is true, of course, that
defendant has not, so far as this record is concerned, acquired
either a legal or prescriptive right to maintain the dam so as
to flood the land in question, and it is also true that plaintiff
has a warranty deed to the property and may, perhaps,
recover from his warrantor in the event he fails in his action
to abate the nuisance; but this does not give him a right of
action for damages which was vested in his grantor, and never
transferred to him by assignment or otherwise.

There are but two instances where the nature of the
nuisance is regarded as important: one where the action is
brought more than five years after the cause thereof accrues;
and the other where the property has been transferred after
the damage is done.  In the former, if the structure is per-
manent and the damages continuous, the statute begins to run
from the time the flooding commences; and in the latter, the
cause of action is in the party who owns the property at the
time of the flooding.

The trial court had considerable difficulty with the case,
and we too find it full of trouble, because of the conflicting
character of the cases from other states, and an apparent want
of harmony in our own decisions.  This is due largely to the
fact that there are all kinds of nuisances and that the dis-
tinction between trespass and nuisance has not always been
preserved.  As a general rule, if a nuisance is permanent in
character, is intended to remain in the condition in which it
was erected until destroyed by the elements, and the damages
are to the land itself, especially where the erection is for a
public or semi-public purpose, the damage is treated as

original, to be recovered in one action, and not continuous in character. See cases hitherto cited, and *Troy v. Cheshire R. R.*, 23 N. H. 83, 101; *Parks v. Boston*, 15 Pick. 198; *Hargreaves v. Kimberly*, 26 W. Va. 789; *Finley v. Hershey*, 41 Iowa 389; *Van Orsdol v. R. R.*, 56 Iowa 470. As heretofore pointed out, it is sometimes optional with the party injured to treat the nuisance as permanent or continuous, at his election; but much depends upon the character of the nuisance. If the erection or structure be permanent, but injurious because of the use made of it, or if the nuisance be a mere trespass, and the trespasser did not have and could not acquire any rights in the premises save by grant or prescriptive use, it is, as a rule, always permissible for the party injured to elect what remedy he will pursue. If he cares to have the nuisance remain or to recognize the trespass, he may have as his damages that which will make him whole because of the depreciation in the value of his property; but in such cases, he is not entitled to have the nuisance abated. On the other hand, if he wishes to get rid of the nuisance or the trespasser, he may have his action for the damages actually suffered down to the time of the commencement of his suit, and an order for the abatement of the nuisance. These damages are, as a rule, the decrease in the rental value down to the time of suit, with such other special damages as he may have suffered which are not prospective in character, and in this way he is made whole.

The controlling features in the instant case are that the dam was and is permanent in character—as permanent as anything which can now be made by the hand of man. The parties each and all understood that the water was to be permanently dammed so as to flow back on the land owned and purchased by plaintiff; and in so far as anything may be said to be permanent in character, this nuisance was of that kind. Moreover, although the defendant city had no power, when it erected the dam, to condemn land for the purpose of making an artificial lake, what it did and undertook to do

was for the public benefit and convenience, and so far as it could legally do so, the legislature authorized the same.

The injury was done to the original owner of the land, and the damage to her was original, and while, perhaps, she might have elected to treat it as a continuing nuisance, a point which we do not now decide, yet when she conveyed the land to the plaintiff, she did not pass to him the right to sue for all damages past, present and prospective, due to the erection of the dam. This has been held in several cases already decided by this court, to some of which reference has already been made.

It may be that plaintiff has a right of action against his grantor upon the covenants of warranty in the deed to him, or it may be that it will be presumed in the first instance that the compensation he paid for the land was based upon the permanency of the dam and a deduction made on account thereof, as held in *Galt v. R. R.*, 41 N. E. (Ill.) 643; *C. & E. I. R. R. v. Loeb*, 8 N. E. 460.

Although there was no proof as to the actual value of the land without the nuisance created by the dam, it is not too much, we think, to assume that $37.50 per acre for land lying so close as this does to the city of Oelwein is an indication that plaintiff received a large reduction in the purchase price, either on the theory that he was buying a law suit with it, or that he was taking it subject to defendant's right to overflow it. If wrong in this and plaintiff's theory be correct as to defendant's rights, he may doubtless sue upon the covenants of warranty in his deed; and, unless her action is barred, his grantor may have her action against the city for damages.

Recurring again to the use made of the land by the defendant city, it may be conceded that it had no right to condemn, at the time it erected the dam, and that the legal-izing act of the legislature has no effect upon the case; yet it still appears that as to the plaintiff in this case, he is in no position to complain. The act as to him was not unlawful. He personally

3. NUISANCE: who may abate: estoppel.

consented to it, was one of the promoters thereof, and assisted in the financing thereof. True, he did not then own part of the land which he now claims was damaged; but as bearing upon his right to elect, if he ever had any, and of his right either in law or equity to have the alleged nuisance abated, his conduct is important; and, as we think, effectually deprives him of the right to treat this nuisance as a continuous one, and to have it abated in an action at law.

It must be borne in mind that we are not speaking now of periodic or noncontinuous overflows of plaintiff's land, or of any nuisances independent of those proximately following the construction of the dam. Such damages would not, of course, be original, but continuing, and for such separate damages, or for any occasioned by anything other than the overflow of the land, anything due to noxious odors, etc., plaintiff may have a right of action; for as to these his grantor could not have sued; or if she had done so, she could not have recovered more than the periodic losses, or for the temporary harm done her or her premises. But in so far as permanent original damages are concerned, the remedy was in her and not in this plaintiff. This is the doctrine announced in *Harvey v. R. R. Co., supra.*

This action is not bottomed on negligence or upon trespass, but is purely for a nuisance created by the defendant, and it is practically conceded in the pleadings that the nuisance was permanent in character; but the trial court, although submitting the issue of permanency, failed to apply the rule of permanency to the case in so far as it affected the measure of plaintiff's recovery, doubtless upon the theory that, even if permanent, plaintiff had the right to treat it as continuous and to have his damages measured by the difference in rental value. In these respects, as applied to the particular facts of the case, there was error. There was really no issue as to the permanency of the structure, and the only reason for submitting it at all was to determine whether or not plaintiff could recover anything due to the flooding of his lands.

The general rule, as we have seen, is that if the nuisance was permanent, the damages were original and inured to the owner of the land at the time the land was first flooded, and did not pass under an ordinary warranty deed to his (or her) grantee. The jury, without any warrant in the testimony, found that the structure was not a permanent one, and the trial court was in error in submitting that issue; especially in not further instructing, had the issue been properly tendered, that, if permanent, plaintiff could not recover. The cases, although in conflict, are overwhelmingly in support of the rules here announced, and we shall not do more than cite a few which sustain our conclusions. They are as follows: *Bizer v. Power Co.*, 70 Iowa 145; *Comm'rs v. Bradford*, 51 Atl. (Md.) 614; *Risher v. Coal Co.*, 147 Iowa 459; *Vogt v. Grinnell*, 123 Iowa 332; *Hempstead v. City*, 63 Iowa 36; *Fowler v. R. R.*, 91 Iowa 533; *Hodge v. Shaw*, 85 Iowa 137; *Finley v. Hershey*, 41 Iowa 389; *Van Orsdol v. R. R.*, 56 Iowa 470; *Hughes v. R. R.*, 141 Iowa 273; *Stodghill v. R. R.*, 53 Iowa 341; *Tegeler v. Kansas City*, 68 S. W. 953; *C. & E. I. R. R. v. Loeb*, 8 N. E. 461; *Galt v. R. R.*, 41 N. E. 643; *City v. Wright*, 41 N. E. 217; *Farley v. Gate City Co.*, 31 S. E. 193; *King v. City of Danville*, 107 S. W. 1189; *Fowle v. New Haven Co.*, 107 Mass. 353; *Same case*, 112 Mass. 334; *Jacksonville R. R. v. Lockwood*, 15 So. 327; *Highland Ave. v. Matthews*, 10 So. 267; *Gartner v. R. R.*, 98 N. W. (Nebr.) 1052; *Cobb v. R. R.*, 58 S. E. 862; *M. K. & T. R. R. v. Graham*, 33 S. W. 577. *Contra: Uline v. R. R.*, 4 N. E. 536; *Aldworth v. City*, 26 N. E. 229; *Mayor v. Dowling*, 47 S. W. 700.

We recognize that no general rules should be announced applicable to all cases of nuisance or of trespass upon real estate; for there are many kinds of nuisances, and many things which are sometimes called nuisances that are mere trespasses. No general rule should be announced applicable to all of these. It is enough to decide the case before us upon its own peculiar facts.

On no theory can the instructions be sustained, and the order of abatement was without authority of law.

For the errors pointed out, the judgment must be, and it is, reversed and the cause remanded.—*Reversed and Remanded.*

All the Justices concur.