EDWARD ASCHE, APPELLEE, v. LOUP RIVER PUBLIC POWER
DISTRICT, APPELLANT.

296 N. W. 439

FILED JANUARY 31, 1941.  No. 30887.

*C. N. McElfresh* and *August Wagner*, for appellant.

*Charles H. Slama* and *Wymer Dressler, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action to recover damages for loss of crops

and for permanent damage to plaintiff's farm caused by seepage from defendant's reservoir. The verdict and judgment were for $21,356, from which defendant appeals.

The record shows that plaintiff was the owner of 200 acres of land, six miles north of Columbus, in Platte county, which he used for many years in farming, stock-raising and dairying. The defendant is a public power district, organized under chapter 86, Laws 1933, and amendments thereto. At a point approximately one mile south of plaintiff's land, defendant constructed a large reservoir, known as Lake Babcock, to impound large quantities of water from the Loup river to furnish water power for the production of electrical energy. On or about August 1, 1937, sufficient waters had been impounded to cause plaintiff's land to become seeped and water-logged by waters escaping from defendant's reservoir.

The trial court, in submitting the case to the jury, instructed that recovery could be had, if sustained by sufficient evidence, for the loss of seven acres of a fourth cutting of alfalfa in 1937 in the amount of $224, loss of crops destroyed in 1938 in the amount of $3,828, for damage to poultry and cow-yards, $1,000, for damage to basement of residence, necessitating repeated pumpings, in the sum of $1,000, for damage to driveway leading to residence, $240, for damage to pasture, cornstalks and stubble land, $240, for total loss of certain lands and damage to balance of the farm in the amount of $46,000. The record shows that a recovery in some amount was had on each of the seven items listed, the total verdict amounting to the sum of $21,356. It was prejudicial error to thus submit the case to the jury.

The measure of damages for the permanent taking of land by seepage is the difference, if any, between the reasonable market value of the land taken, including improvements thereon before the damage from seepage, if any, occurred, and the reasonable market value of such land, including improvements thereon, after the damage from seepage, if any, occurred. The evidence of damage to the

poultry and cow-yards, the basement of the residence, the driveway to the residence, as well as damage to the pasture, cornstalks and stubble land, is evidence which is properly admissible in showing the difference in the market value before and after the taking, and the jury may properly consider such damage as proved in arriving at such difference. Such claims may not, however, be submitted as separate items of damage if they all constitute part of the permanent damages. To so do, when viewed with the instruction that plaintiff is entitled to recover the difference between the reasonable market value of the land not taken, before and after the taking, permits a double recovery upon these items. The same result would occur if the whole farm were permanently damaged but not taken, and the jury instructed that plaintiff was entitled to recover the difference in the reasonable market value of the whole farm before and after the seepage occurred. It is evident therefore that, when the jury returned a verdict upon the specific items of damage listed, and also a large sum for the difference in value of the whole farm before and after the seepage occurred, such verdict was necessarily excessive.

In considering the law in reference to damage from seepage, our statute is in line with the English rule established in the case of *Fletcher v. Rylands* (1866) L. R. 1 Exch. 265, 4 Hurlst. & C. 263, 1 Eng. Rul. Cas. 235. This case was in the various courts for many years, and in the long decision many judges gave their opinions upon various phases of it, and from the judgment of the Exchequer Chamber a proceeding in error was brought to the House of Lords, and the opinion of the Lord Chancellor and several others is set out in full, and the rule finally approved reads as follows: "The person who for his own purposes brings on his land, and collects and keeps there, anything likely to do mischief if it escapes, is *prima facie* answerable, if it escapes, for all the damage which is the natural consequence." See 38 A. L. R. 1244, Ann.

However, the Nebraska statute makes the liability for damages from seepage absolute.

The plaintiff was not required to allege or prove that the defendant was negligent in the construction or maintenance of Lake Babcock. The cause of action in this case did not accrue until damages had been sustained. The defendant public power district had a right to collect the water and store it in Lake Babcock, but such district was answerable for the damages caused when such water seeped onto the plaintiff's land.

In the recent case of *Applegate v. Platte Valley Public Power and Irrigation District*, 136 Neb. 280, 285 N. W. 585, a judgment for separate crop losses in addition to permanent damage to the land was sustained. An examination of the *Applegate* case discloses that it was also a seepage case, in which the plaintiff for a first cause of action sued to recover permanent damages to his lands, and the jury returned a verdict of $6,500 on this cause of action. The second cause of action was for damages for loss of alfalfa during 1936 and 1937, and the jury returned a verdict of $600 for these crop losses, and the judgment entered upon said verdict was affirmed by this court.

It will be noted, however, that in the *Applegate* case the first cause of action was for permanent damages to lands owned *in fee* by plaintiff, while the second cause of action for two years of crop damage was on land of which he had possession as a *tenant* only. There is also to be considered that the crop damage in 1937 was caused by a major break in the canal leading to the reservoir, instead of by seepage.

We have examined all the evidence in the record pertaining to the difference in the reasonable market value of the farm before and after the seepage. The jury fixed such damage at $19,000. The trial court limited to seven the number of witnesses which each side could call as to the damage to the farm as a whole. The plaintiff called to the stand as witnesses his son and his brother-in-law, who testified that the farm was worth $275 an acre before the seepage occurred. Two neighbors made it $265 an acre, three made it $250 an acre, and one said $230. Some of

these also had claims of their own pending for seepage damages. They testified that the farm since the seepage occurred was worth about $20 an acre. On the other hand, the defendant called real estate agents of many years' experience, who placed the value of the farm before the seepage occurred at $110 to $125 an acre. Reliable witnesses testified the entire farm was worth $20,000 to $23,000 before it seeped.

It is charged by the defendant that a recovery of $19,000 for the land damage, or an average of $190 for the 100 acres south of the creek, or $95 an acre for the whole farm, half of which is claimed to be outside of the seepage area, is so excessive in view of the testimony that it must have been arrived at through some influence brought to bear upon the jury, or by passion and prejudice, and that it is certainly not sustained by the evidence.

There was reputable evidence on the part of defendant that, with an expenditure of a little over $6,000 for tiling the farm and waterproofing the basement, the farm would then raise better crops than before.

We are obliged to hold that the evidence will not fairly sustain a verdict of $19,000 in addition to the specific items of damage allowed totaling $2,356. Whether the jury were misled by the erroneous method of submitting the case, or whether such excessive verdict was the result of passion and prejudice, we, of course, are unable to say.

It is the law of this state that the power of setting aside a verdict on the ground that it is excessive is one to be used sparingly, and that a verdict will not be set aside simply because the appellate court might have decided differently on the same facts. *Watson v. Miller,* 131 Neb. 74, 267 N. W. 230.

"A verdict so clearly excessive as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, will be set aside and a new trial awarded." *Collins v. Hughes & Riddle,* 134 Neb. 380, 278 N. W. 888. See, also, *Schulz v. Central Nebraska Public*

*Power and Irrigation District, ante,* p. 529, 293 N. W. 409.

Defendant devotes a considerable part of the reply brief to the alleged attempt of the plaintiff to improperly influence the jury, and insists that a new trial should be granted on that ground. We do not think this charge was established by the evidence, for the record does not disclose that any improper influence was, in fact, brought to bear upon any juror. There was no error, therefore, in overruling that part of the motion for a new trial based upon the claim that the jury were improperly influenced.

For the reasons set out in this opinion, the judgment is reversed and the cause remanded for a new trial.

REVERSED.

JOHNSEN, J., not participating.