OTTO HEIDEN, APPELLEE, v. LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT.

298 N. W. 736

FILED JUNE 13, 1941. No. 30999.

*August Wagner* and *C. N. McElfresh,* for appellant.

*Walter, Flory & Schmid, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ., and MEYER, District Judge.

MEYER, District Judge.

This is a suit for permanent damages to plaintiff's farm caused by seepage from the defendant's reservoir. The plaintiff had judgment for $13,000, and defendant appealed.

The defendant is a public power district organized under chapter 86, Laws 1933, and amendments thereto. Plaintiff's farm is located two miles north from the city of Columbus. Fifty acres thereof are pasture and farm land lying on the side of a hill. Upon this hill are also located plaintiff's farm buildings and dwelling-house, a modern home built in 1933. The remaining portion of said farm, consisting of 61½ acres hay meadow and 47 acres cultivated ground, is level bottom land lying southward from the base of the hill. About one mile north of plaintiff's farm defendant constructed a reservoir known as Lake Babcock. In the summer of 1937 it impounded a large body of water in said lake, and plaintiff alleges that in the fall of that year his bottom land was inundated and flooded with waters seeping from said lake and that said seepage condition is permanent. After seepage reached plaintiff's farm,

the defendant constructed a drainage ditch through the plaintiff's lower ground, condemning six acres thereof for that purpose, reducing plaintiff's farm to 152½ acres.

It is urged that the court erred in overruling the defendant's motion for a change of venue. The motion was supported by affidavits stating that, in addition to Lake Babcock, defendant constructed a canal and transmission lines within the county; that numerous disputes arose between the district and landowners during the construction of said projects; that many claims were presented against the defendant for right of way and damages resulting, and that numerous condemnations were prosecuted therefor and for easements for said lines, and that claims for removal of and injury to trees arose and reached the courts; that seepage from Lake Babcock damaged approximately 2,000 acres of land; that numerous suits were brought for such damage, and that suits were then pending against the defendant in the county in which a total of over $156,000 in damages was sought; from all of which affiants stated bias and prejudice existed against the defendant to such an extent that a fair and impartial jury trial could not be had in said county. In opposition to the motion, affidavits were presented to the effect that the seepage area was limited to about 1,000 acres; that the number of persons affected was comparatively few, that there had been little, if any, discussion about the seepage conditions, and that no bias or prejudice existed against the defendant.

"Unless an abuse of discretion is shown, this court will not disturb the ruling of the lower court upon a motion for a change of venue." *Hinton v. Atchison & N. R. Co.*, 83 Neb. 835, 120 N. W. 431. While the verdict lends support to the showing made, considering only the affidavits submitted to the trial court, we are unable to detect any abuse of discretion in overruling the motion.

The plaintiff testified to the annual net income he had received from the rental of a portion of his farm over a period of years. The defendant urges that the admission of this evidence was erroneous. We do not agree. Evidence as to

the nature and productivity of the soil and crop yields measured in tons and bushels, or in net income from cash or crop rentals, when shown with reasonable certainty, may be admitted as elements to be considered in fixing the value of the leasehold. See *James Poultry Co. v. City of Nebraska City,* 136 Neb. 456, 286 N. W. 337.

It is also urged that there is a serious conflict between the evidence and the instructions on the question of damages. The court instructed the jury that if they found for the plaintiff they should allow him the difference, if any, between the reasonable market value of the whole farm, including improvements thereon, before the damage from seepage, if any occurred, and the reasonable market value of the farm, including improvements thereon, after the damage from seepage, if any occurred. The instruction is in harmony with the rule announced by this court in *Asche v. Loup River Public Power District,* 138 Neb. 890, 296 N. W. 439, when permanent damages are sought. Actually, however, there was no evidence on which to base the comparison required by the instruction, unless it be considered that the plaintiff's damages did not accrue until the time of suit.

Plaintiff's cause is based on the theory that there was a virtual taking of his bottom land by seepage water in the fall of 1937 and that this condition will continue without probable or prospective change. His testimony and that of his witnesses was to the effect that since said time this land has been too wet for the planting and harvesting of crops, and the whole evidence fairly shows, we think, that seepage reached its height, or nearly so, during that late fall, and continuously thereafter, except perhaps for a slight decrease and minor fluctuations, the general condition with respect thereto and its effect upon farming operations have remained practically constant.

In this state of the record, while it was proper in determining plaintiff's loss to present evidence as to the condition of the soil proximately caused by said seepage and all effects present and prospective that will necessarily result therefrom, it is our opinion that his damages, while perhaps not

all then perceptible, and his cause of action therefor accrued in the late fall of 1937, after which time he says he was unable to make a beneficial use of the seeped acreage. See *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237, 73 N. W. 540; *Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb. 698, 70 N. W. 263; *Chicago, B. & Q. R. Co. v. Mitchell,* 74 Neb. 563, 104 N. W. 1144; *Meister v. Krotter,* 134 Neb. 293, 278 N. W. 483; *Irvine v. City of Oelwein,* 170 Ia. 653, 150 N. W. 674. In the latter case the court said: "The general rule is that where the nuisance is permanent, and the damages are to the land itself, and all parties intend that the nuisance shall be permanent, the cause of action arises when the land is first flooded."

The witnesses all testified to the value of the whole farm in the summer of 1937 immediately before the seepage and the value of the farm at the time of trial, which was more than two years later. Nowhere in the record do we find any evidence as to the value of the farm immediately after it was damaged from seepage. If, then, the jury based their verdict upon the evidence as to the difference in the value of said farm before seepage and at the time of trial, they did so in contravention of the instruction given. On the other hand, if they attempted to follow the instruction in making the comparison as to value, their verdict is without foundation in the evidence. This court has frequently held that an instruction not based upon the evidence, although correct as a legal proposition, is ground for reversal if it has a tendency to mislead the jury. *Esterly Harvesting Machine Co. v. Frolkey,* 34 Neb. 110, 51 N. W. 594.

Defendant in his answer alleged that plaintiff elected to treat the damages he sustained from seepage as temporary and settled with the defendant for the annual crops for the year 1937 for the sum of $1,558.07 and for 1938 for the sum of $1,005.90, and asked that the plaintiff's recovery be reduced accordingly. The trial court sustained a motion striking these allegations from the answer. Section 70-707, Comp. St. Supp. 1937, provides that any district organized under the provisions of the act shall be liable for all seepage

damage. The loss of crops growing upon the land in the summer of 1937 at the time said land was taken over by seepage was a part of plaintiff's damage for which he was entitled to be compensated, as well as for permanent damage to his land. *Fremont, E. & M. V. R. Co. v. Harlin, supra.* The court's action in sustaining plaintiff's motion to strike from the answer the allegations with reference to the settlement for crops destroyed in the field in 1937 was therefore proper. The action in sustaining the motion as to the allegations of settlement for crop loss for 1938 was, in our opinion, erroneous. Under the circumstances of this case, to permit the plaintiff to recover permanent damages to his land on the theory it had been taken over by seepage in the fall of 1937 and at the same time permit him to recover for the loss of the use of said land for subsequent years, or, in other words, for the loss of crops that the land would have produced but for the injury caused by the same seepage, would be to permit the recovery of double damages. The value of the use is an element to be considered in fixing the general damages and is included therein. The plaintiff having first treated his damages as temporary, collecting for the loss of use of said land, and later suing for permanent damages to his real estate basing his action therefor on the same acts and circumstances which caused the loss of crops for which he has collected, we think he should be called upon to account for the amount received for crop loss for 1938 and that the same should be credited on the recovery which he now seeks.

Plaintiff relies upon *Applegate v. Platte Valley Public Power and Irrigation District,* 136 Neb. 280, 285 N. W. 585, in support of the motion. The case is not in point. In that case the damages to crops accrued on leased land and the crop loss for the second year was also occasioned by a major break in the canal leading to the reservoir.

The defendant also attacks the verdict as being so excessive as to lead to the conclusion that it was the result of mistake, prejudice, or passion.

Plaintiff's brother-in-law testified that the value of the

farm before seepage was $180 an acre and that the value at the time of trial was $2,500. Four other witnesses, neighboring farmers, all of whom have claims against the district, fixed the value at $160 to $185 an acre before seepage and $1,000 to $2,500 at the time of trial. Other farmers from the county called as witnesses for the defendant placed the value before seepage at $100 an acre and one placed the value at the time of trial at $5,000, one at $60 an acre and one at $50 an acre. A real estate broker also fixed the value at $100 an acre before seepage, and another placed the value of the lower ground before seepage at $125 to $135 an acre and the upland at $75 an acre. The latter witness fixed the value of the entire farm at the time of trial at $85 an acre. Approximately one-third of the acreage of plaintiff's land was not affected by seepage and some of the witnesses thought the damage could be reduced by the construction of side laterals.

Ordinarily, a verdict will not be set aside simply because the appellate court might have decided differently on the same facts. *Watson v. Miller,* 131 Neb. 74, 267 N. W. 230. Nevertheless, "A verdict so clearly excessive as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not appearing in the record, will be set aside and a new trial awarded." *Collins v. Hughes & Riddle,* 134 Neb. 380, 278 N. W. 888. What basis for computation of damages the jury used we do not know. Whether they were confused by the difference in the instructions and the evidence as to the time when the comparison of value should be made or whether their verdict was the result of mistake, passion, or prejudice, or some means not appearing in the record, we are unable to determine. But after considering the record fully we are bound to conclude that in no event will the evidence fairly sustain the verdict returned. For the reasons set out in this opinion, the judgment is reversed and the cause remanded for new trial.

REVERSED.